**GLENDORA, Plaintiff,**

v.

**GANNETT COMPANY INCORPORATED, Gannett Suburban Newspapers, John Curley, Gary Watson, Douglas McCorkindale, Gary Sherlock, Kenneth Paulson, Defendants.**

No. 93 Civ 5561 (VLB).

United States District Court, S.D. New York.

April 7, 1994.

Glendora, pro se.

Robert M. Callagy, Satterlee Stephens Burke & Burke, New York City, for defendants.

### MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

#### I

This suit asserting violations of the federal antitrust laws by the defendants in connection with their chain of local newspapers in the northern counties of the Southern District of New York contains numerous highly generalized allegations but fails to set forth in an adequate way the elements required to state a claim upon which relief can be granted under any of those statutes.

By Report and Recommendation dated January 14, 1994, United States Magistrate Judge Mark D. Fox has recommended granting defendants' motion under Fed.R.Civ.P. 12(b) to dismiss the complaint for failure to state a claim upon which relief can be granted. The complaint is dismissed as recommended in the Report and Recommendation, which is approved and adopted.

#### II

The bulk of the complaint in the present case consists of criticisms of defendants' conduct of their newspaper business which may be proper topics for robust public debate,[1] but do not suggest viable legal claims. For example, the complaint indicates that defendants' publications do not publish material which plaintiff believes deserves such publication. But the First Amendment has long been recognized as promoting diversity in expression of differing views by allowing numerous means of expression to flourish, not by allowing suits because a given publication or even chain declines to broadcast or publish any particular view. See *Miami Herald v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974).

■ The complaint also attempts to allege illegal monopolization based upon defendants'

publications assertedly having a fifty-percent (50%) share of a localized market. Such a market share is not exclusionary to the extent of depriving customers of other options; moreover, a high market share is not considered monopolistic under the federal antitrust laws unless obtained through anticompetitive behavior established by credible facts. See *Spectrum Sports v. McQuillan*, —— U.S. ——, 113 S.Ct. 884, 122 L.Ed.2d 247 (1979). Obtaining a substantial market position through purely "honestly industrial" means is conducive to efficiency beneficial to the public. See *Berkey Photo v. Eastman Kodak*, 603 F.2d 263 (2d Cir.1979), *cert. denied* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980), modifying the view expressed in *United States v. Aluminum Co. of America*, 148 F.2d 416 (2d Cir.1945).

#### III

Two aspects of the complaint contained factual claims which although not viable as pleaded, if supported by more detailed information, might allege possible violations of the federal antitrust laws. As explained in part IV, however, such claims cannot be pursued by plaintiff.

■ 1. The complaint alleges that defendants, utilizing the leverage of an approximately 50% share of the market for local newspaper service in the upstate counties in the Southern District of New York, require advertisers in newspapers to purchase space in a significant number of local papers in order to advertise in any. The federal antitrust laws seek to maximize consumer choice in the marketplace. See generally *Reiter v. Sonotone Corp.*, 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). For this purpose they inhibit use of market power in one field to increase power in another market, or for the purpose of compelling potential customers to purchase unwanted goods or services in order to obtain those they wish to obtain.

■ If (a) market power exists, (b) the functions of differing newspapers in defendants' chain are separate, (c) unwanted ad-

---

1. See *New York Times v. Sullivan*, 376 U.S. 254,      84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

vertising is required for any advertising to be placed, and (d) interstate commerce is substantially affected by such a practice in the aggregate, an illegal tying arrangement contrary to Section 1 of the Sherman Act (15 U.S.C. § 1) could conceivably be alleged. See *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984).

■ Restrictive tying arrangements based on use of the leverage of market power to compel unwanted purchases in order to secure other goods or services, which affects individual natural persons and affects interstate commerce in the aggregate may be subject to antitrust challenge. *Gonzalez v. St. Margaret's House*, 880 F.2d 1514 (2d Cir.1989); *Hill v. ATO*, 535 F.2d 1349 (2d Cir.1976); see *Summit Health Ltd. v. Pinhas*, 500 U.S. 322, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991). But the present complaint provides no details concerning the scope, rigidity, method of communication, or practical consequences to plaintiff or to commerce, of the alleged advertising restrictions.

■ 2. The complaint alleges that defendants obtained a dominant share in the local newspaper field in the counties involved through acquisitions of competitors. This might raise questions under Section 7 of the Clayton Act (15 U.S.C. § 18) if the aggregate effect of such acquisitions "may be to substantially lessen competition" in interstate commerce. At present no dates, financial amounts, or other information about the claimed acquisitions, whether or not they were of otherwise failing companies, or how interstate commerce may have been affected are provided.[2]

■ Private suits to enforce Section 7 are authorized if significant actual or threatened injury to the plaintiff resulting from the alleged violation can be established. *California v. American Stores*, 495 U.S. 271, 110 S.Ct. 1853, 109 L.Ed.2d 240 (1990). Potentially disruptive remedies such as divestiture of completed transactions involving integration of ongoing business activities have never been granted in private suits under Section 7.

### IV

■ Plaintiff's complaint is drafted in colorful terms and very explicitly focuses on any conduct of defendants directly affecting plaintiff. It is clear from even a superficial perusal of the complaint that any wrongdoing on the part of defendants which directly affected plaintiff in an adverse manner would have been fully described in the complaint. The complaint is deficient in regard to any actual or threatened injury to plaintiff flowing from any possible violations of federal law on the part of defendants. Such injury is required in order to pursue litigation. See *Ass'n of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); *Allen v. Wright*, 468 U.S. 737, 750–52, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984); *General Fireproofing v. Wyman*, 444 F.2d 391, 393 (2d Cir.1971).

There is deafening silence in that plaintiff's pleading concerning:

(a) any specific advertising placed by plaintiff with defendants for which plaintiff had to pay more than otherwise on account of any multipublication advertising requirements;

(b) any instance in which plaintiff abandoned any advertising because of such requirements;

(c) any additional costs incurred by plaintiff for advertising elsewhere because of such requirements;

(d) any other concrete, specific injury suffered by plaintiff because of any conduct of the types discussed in part III above.

Where a party has direct knowledge about a matter known to be relevant to a civil suit in which that party is a litigant, and fails to

---

**2.** While Section 7 contains no time limit for challenging an acquisition, the lapse of time is relevant to what remedy, if any, is appropriate should a violation be found. Any adverse impact on economic activity which might be caused must also be taken into consideration. See *Cali-* *fornia v. American Stores, infra; United States v. EI DuPont de Nemours & Co.*, 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957) (DuPont—GM); Markham, "The DuPont—General Motors Decision," 43 Va.L.Rev. 881 (1957).

assert facts which if true would have assisted that party, the logical conclusion is that such facts do not exist. See *Interstate Circuit v. United States*, 306 U.S. 208, 225–26, 59 S.Ct. 467, 473–74, 83 L.Ed. 610 (1939); *Caminetti v. United States*, 242 U.S. 470, 495, 37 S.Ct. 192, 198, 61 L.Ed. 442 (1917); *Brink's Inc. v. City of New York*, 717 F.2d 700 (2d Cir.1983).

SO ORDERED.