**GLENDORA, Plaintiff,**

v.

**CABLEVISION SYSTEMS CORPORATION, Charles F. Dolan, William J. Bell, Marc A. Lustgarten, Francis F. Randolph, Jr., John Tatta, James A. Kofalt, Joseph Azznara, Thomas Garger, and William Quinn, Defendants.**

No. 93 Civ. 8344(CLB).

United States District Court,
S.D. New York.

July 19, 1995.

Glendora, White Plains, NY, pro se.

Robert M. Callagy, Saterlee Stephens Burke & Burke, New York City, for defendants.

### MEMORANDUM & ORDER

BRIEANT, District Judge.

Plaintiff Glendora, an individual who produces video programs, brings this pro se[1] action under the Cable Communications Policy Act of 1984 as amended and supplemented by the Cable Television Consumer Protection and Competition Act of 1992, codified principally in 47 U.S.C. §§ 521 *et seq.*, ("the Cable Act"), as well as the First and Fourteenth Amendments of the United States Constitution. Supplemental state law claims are also asserted. This case is now before the Court on remand pursuant to directions of our Court of Appeals. *See Glendora v. Cablevision Systems Corp.*, 45 F.3d 36 (2d Cir.1995). Familiarity with all prior proceedings and the underlying facts of Plaintiff's claims is assumed. Essentially, Glendora contends her rights were violated when Defendants Cablevision Systems Corporation and its offi-

cials (collectively "Cablevision") pressured by unidentified Nassau County officials, canceled her weekly series that dealt with her litigations. Glendora has engaged in numerous other pro se lawsuits in both state and federal court. *See, e.g., Glendora v. Gannett Co. Inc.*, 858 F.Supp. 369 (S.D.N.Y.1994), *aff'd*, 40 F.3d 1238 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1435, 131 L.Ed.2d 315 (1995); *Glendora v. Dolan*, 871 F.Supp. 174 (S.D.N.Y.1994), *aff'd*, 48 F.3d 1212 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995); *In Matter of Glendora v. New York State Division of Housing and Community Renewal*, —— A.D.2d ——, 628 N.Y.S.2d 343 (2d Dep't 1995); *Glendora v. Cohen*, —— A.D.2d ——, 627 N.Y.S.2d 947 (2d Dep't 1995); *Glendora v. Duberstein*, —— A.D.2d ——, 625 N.Y.S.2d 648 (2d Dep't 1995); *Glendora v. Amicone*, —— A.D.2d ——, 624 N.Y.S.2d 928 (2d Dep't 1995); *Glendora v. CBS, Inc.*, —— A.D.2d ——, 624 N.Y.S.2d 254 (1995); *Glendora v. Gallicano*, 206 A.D.2d 454, 615 N.Y.S.2d 44 (2d Dep't 1994), *appeal denied*, 84 N.Y.2d 967, 621 N.Y.S.2d 514, 645 N.E.2d 1214 (1994); *Glendora v. Gannett Suburban Newspapers*, 83 N.Y.2d 757, 615 N.Y.S.2d 875, 639 N.E.2d 416 (1994); *Glendora v. Kofalt*, 162 Misc.2d 166, 616 N.Y.S.2d 138 (Westchester County 1994) (appeal pending). She alleges that her litigation always raises questions of general interest worthy of media coverage. Cablevision contends Glendora uses the cable outlet to further her personal vendettas against her adversaries.

On February 22, 1995, Cablevision moved to dismiss the Amended Complaint. By oral decision on March 24, 1995, this Court denied that portion of the motion to dismiss based on collateral estoppel and mootness. (*See* Transcript). Here, the Court addresses the merits of Glendora's federal claims.

■ In resolving this motion, the Court is required to respond to the mandate issued by our Court of Appeals on January 11, 1995, which states that the question "left unanswered" by this Court in previous proceed-

---

**1.** Media Access of New York ("MANY") participates in this proceeding as amicus curiae in support of Plaintiff's position. MANY is a coalition of individuals, including producers and sub-scribers of public access video programs, dedicated to the promotion of public access to electronic media.

ings is "whether section 531(e) [of the Cable Act] is applicable herein and, if it is, by whom should its provisions be enforced; specifically, does a violation of section 531(e) give rise to a private federal cause of action." *Glendora,* 45 F.3d at 38. By remanding the matter to this Court for further proceedings rather than simply affirming dismissal of the action, our Court of Appeals suggests that such an implied right exists.[2]

Section 531 of the Cable Act provides that, "[s]ubject to section 544(d) of this title, a cable operator[3] shall not exercise any editorial control over any public, educational, or governmental use of channel capacity provided pursuant to this section." 47 U.S.C. § 531(e). Section 544(d) permits operator intervention only "if such cable services are obscene or are otherwise unprotected by the Constitution of the United States." 47 U.S.C. § 544(d)(1).

■ Cablevision alleges the Cable Act is inapplicable herein because Glendora is not entitled to access on its channels in Nassau County and western Suffolk County, New York ("the Long Island System"). The franchise agreements pursuant to which Cablevision operates the Long Island System limit the public access channels to "the public within" the respective municipalities. (*See* Exhibits C–L attached to Strickland Reply Aff.)[4] Glendora, a Westchester County resident, does not reside in any county served by Cablevision's Long Island system. However, Glendora alleges she has a sponsor, Virginia Mondesando, who resides in Central Islip, within the Long Island System. (*See* Letter

to Virginia Mondesando, dated September 16, 1993, and Access User Contract, attached to Pro Se Plaintiff's Brief). It is undisputed that beginning in September, 1993, Glendora's video program was broadcasted by Cablevision on its public access channel serving Nassau County. Cablevision thereby admitted her right to be heard on public access. This Court concludes that Glendora's residency does not bar her use of Cablevision's public access channels, or application of Section 531(e) of the Cable Act to this case, especially in light of the sponsoring request of Ms. Mondesando.

■ To determine whether an implied right of action exists under Section 531(e), this Court's "focal point is Congress' intent in enacting the statute." *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988). Congressional intent "may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment." *Id.* (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 18, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979)). In *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), the United States Supreme Court identified factors as guides to discerning Congressional intent:

(1) whether the plaintiff is one of the class for whose " 'especial' " benefit the statute was enacted, "that is, does the statute create a federal right in favor of the plaintiff"; (2) whether there is "any indication of legislative intent, explicit or implicit,

---

**2.** Our Court of Appeals may affirm a judgment for reasons not considered by the district court. *See Richardson v. Selsky,* 5 F.3d 616 (2d Cir. 1993) ("Although the district court did not address the appellees' claim that they were entitled to qualified immunity, we may affirm on any basis supported by the record, including grounds upon which the district court did not rely.") (citing *Citrus Marketing Bd. of Israel v. J. Lauritzen A/S,* 943 F.2d 220, 223 (2d Cir.1991)).

**3.** The term "cable operator" is defined as: any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system. . . .

47 U.S.C. § 522(4).

**4.** Under the Cable Act, a franchise authority may require a franchisee to provide channels for public, educational, or governmental ("PEG") use. 47 U.S.C § 531(b). The New York State Commission on Cable Television has promulgated rules and regulations governing the franchising of cable operators in New York State, including a requirement that cable television franchisees designate channel capacity for PEG use. Cablevision provides PEG access pursuant to the terms of its franchise agreements with individual municipalities in Nassau and Suffolk Counties, but allegedly offered public access channel capacity even prior to such requirement under law.

either to create such a remedy or to deny one"; (3) whether it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff"; and (4) whether the cause of action is "one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law."

*Chan v. City of New York,* 1 F.3d 96, 102 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 472, 126 L.Ed.2d 423 (1993) (quoting *Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2088).

■ Examining these *Cort* factors as applied in this case, the Court concludes Glendora has an implied federal cause of action under Section 531(e) of the Cable Act. First, as a public user of cable channels, Glendora is among the "class for whose especial benefit" the statute was enacted. Section 531(e) prohibits a cable operator from exercising "any editorial control over any public, educational, or governmental use of channel capacity." 47 U.S.C. § 531(e). By its very terms, the beneficiaries of this provision are producers and viewers of public, educational, and governmental programs. Glendora therefore falls within the class for whose benefit Section 531(e) was enacted.

The language and structure of the statute also support the conclusion that Congress intended an implied cause of action here. The Cable Act fails to provide any express remedy for cable operator violations of Section 531(e). The enforcement provision of Section 531(c) applies only to franchising requirements:

A *franchising authority* [5] *may* enforce any *requirement in any franchise* regarding the providing or use of such channel capacity. Such enforcement authority includes the authority to enforce any provisions of the franchise for services, facilities, or equipment proposed by the cable operator which relate to public, educational, or governmental use of channel capacity, whether or not required by the franchising authority pursuant to subsection (b) of this section.

47 U.S.C. § 531(c). Section 531(e) may be considered a "franchise requirement" when a specific franchise agreement explicitly incorporates federal law. However, when a franchise agreement fails to incorporate the provision, no expressly designated mechanism under federal law exists to enforce Section 531(e). Interpreting Section 531(c), which speaks in permissive terms and does not apply when an agreement fails to incorporate federal requirements, as the only method under federal law of enforcing Section 531(e) contradicts the mandatory terms of this provision, providing that a cable operator "shall not exercise any editorial control" except with regard to obscenity matters.

The fact that Congress explicitly conferred a private right of action in other provisions of the Cable Act is not determinative of whether an implied right exists here. *See Herman & MacLean v. Huddleston,* 459 U.S. 375, 387 n. 23, 103 S.Ct. 683, 690 n. 23, 74 L.Ed.2d 548 (rejecting maxim of statutory construction *expressio unius est exclusio alterius* in context of securities laws). This Court shares the concern implicit in the decision of the Court of Appeals in this case; it is difficult to believe that Congress provided a panoply of enforcement mechanisms for leased access producers without intending to provide any direct method of enforcing public, educational, or governmental access to cable channels.

In a provision similar to Section 531(e), the Cable Act provides, in relation to leased access programming, that "[a] cable operator shall not exercise any editorial control over any video programming provided pursuant to this section, or in any other way consider the content of such programming" in determining whether to make channel capacity available. 47 U.S.C. § 532(c)(2). Congress recognized an express private cause of action to enforce this provision. *See* 47 U.S.C. § 532(d) ("Any person aggrieved by the failure or refusal of a cable operator to make channel capacity available for use pursuant to this section may bring an action in the district court of the United States ... to compel that such capacity be made available.").

---

5. The term "franchising authority" is defined as "any governmental entity empowered by Federal, State, or local law to grant a franchise." 47 U.S.C. § 522(9).

Congress also provided that an aggrieved person may seek relief from the Federal Communications Commission. *See* 47 U.S.C. § 532(e) ("Any person aggrieved by the failure or refusal of a cable operator to make channel capacity available pursuant to this section may petition the Commission for relief under this subsection upon a showing of prior adjudicated violations of this section."). The similarity between Sections 531(e) and Section 532(c)(2) supports the conclusion that Congress intended at least a private federal cause of action to exist for public access users.

As required by the third *Cort* factor, the Court concludes it is "consistent with the underlying purposes of the legislative scheme" for an implied right of action to exist under Section 531(e). One of the stated purposes of the Cable Act is to "assure that cable communications provide and are encouraged to provide the widest possible diversity of information sources and services to the public." 47 U.S.C. § 521(4). Recognizing a private right of action for public access users under Section 531(e) furthers this goal. Often, public, governmental, and educational entities offer unique or minority viewpoints which may remain unrepresented in leased access programming. A user's right to seek redress in federal court for unlawful editorial control encourages cable operators to provide diverse information sources and services to the public, as was contemplated when these systems were authorized.

Finally, the claim here is not "one traditionally relegated to state law, in an area basically the concern of the States." *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088. A purpose of the Cable Act is to "establish a national policy concerning cable communications." 47 U.S.C. § 521(1). Congress has deemed it a national policy to insure that cable operators refrain from exercising improper editorial control. Accordingly, consistently with the mandate of our Court of Appeals, this Court concludes as a matter of law that the *Cort* factors as applied here support a conclusion that Congress intended to provide an implied right of action under Section 531(e).

■ Glendora also asserts a claim pursuant to 42 U.S.C. § 1983 for violation of her rights under the First and Fourteenth Amendments of the United States Constitution. To recover under Section 1983, a plaintiff must show the alleged violation occurred "under color of state law," which "has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *United States v. Price,* 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 1157 n. 7, 16 L.Ed.2d 267 (1966).

■ Our Court of Appeals in *Jensen v. Farrell Lines, Inc.,* 625 F.2d 379, 384 (2d Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981), identified "two general approaches that the [Supreme] Court has used to determine whether seemingly private action is in fact state action." First, the "state-function approach" examines whether "the conduct of the private actor is equivalent to the performing of a state function, or is traditionally associated with sovereignty." *Id.* at 384. Under this approach, "[i]t is not enough if the private entity is merely affected with the public interest; it must exercise powers 'traditionally exclusively reserved to the State.'" *Id.* The second approach is to examine "whether the state and the private actor have a 'symbiotic relationship,' ... making them so significantly involved with one another as to render the private actor subject to the constitutional responsibilities of the state." *Id.* (citations omitted). A related inquiry asks, "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* at 385.

■ This Court concludes that Cablevision is not a state actor under either approach. The ownership and operation of an entertainment facility are not powers traditionally exclusively reserved to the State, nor are they functions of sovereignty.

Nor does a "symbiotic relationship" exist between the State and Cablevision. That Cablevision is subject to state and federal regulation, or operates pursuant to a franchise, does not transform its actions, including decisions to cancel public access programs, into actions of the government. *See*

*Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 358–59, 95 S.Ct. 449, 457–58, 42 L.Ed.2d 477 (1974) (regulation of privately owned distribution of electricity to the public does not render decision to terminate service state action). "That a private entity performs a function which serves the public does not make its acts state action." *Rendell– Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418 (1982) (termination decision by nonprofit privately operated school not acts of state notwithstanding virtually all of school's income was derived from government funding). Likewise, the fact that government regulations require public access or prohibit censorship does not convert a private entity's decision to violate those regulations into a governmental decision. *See Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (discriminatory practices of private club not state action). Similarly, the allegation that Cablevision is a monopoly is insufficient to transform its action into state action. *See Jackson,* 419 U.S. at 358, 95 S.Ct. at 457; *Public Utilities Commission v. Pollak,* 343 U.S. 451, 462, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952) (disclaiming reliance on monopoly status of the transit authority in finding state action).[6]

■ This Court agrees with the Court of Appeals for the District of Columbia, which recently held in *Alliance for Community Media v. FCC,* 56 F.3d 105, 120–21 (D.C.Cir. 1995), that the public access channels are not First Amendment "public forums." That Court rejected the plaintiffs' assertions that the channels were private property dedicated to public use, and concluded that prior decisions by the United States Supreme Court "cannot support a determination that cable access channels are so dedicated to the public that the First Amendment confers a right on the users to be free from any control by the owner of the cable system." *Id.* at 123.

Unlike the allegations in *Alliance* or the cases previously cited, however, Glendora also alleges in the Amended Complaint that cancellation of her weekly public access series was state action because it was prompted by pressure from unnamed Nassau County officials. In *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980), the Supreme Court held that a private individual who conspires with government officials, or who is a "willful participant in joint action with the State or its agents," may be sued under Section 1983. Glendora has failed to identify by name any official who influenced Cablevision's decision but claims she will do so once discovery takes place. If joint action between state officials and Cablevision is established, state action may be present.

■ As our Court of Appeals held in the prior appeal, "[l]ike many pro se complaints, Glendora's is verbose where verbosity is unnecessary and sparse where causal allegations are required," but this Court must follow "the well-settled rule, particularly applicable in pro se civil rights actions, that a complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.' " *Glendora,* 45 F.3d at 37 (citations omitted). Absent evidence of the actual existence and participation of these unnamed Nassau County officials, however, that portion of the Amended Complaint founded on Section 1983 will have to be dismissed. This branch of the motion to dismiss may be renewed at the close of discovery.

■ Injunctive relief has already been granted to Glendora against the defendants in a parallel state court case between these same parties. *See Glendora v. Kofalt,* 162 Misc.2d 166, 616 N.Y.S.2d 138 (Westchester County 1994) (appeal pending). Glendora concedes that cablecasting of her program

---

**6.** Glendora alleges the "Amtrak" decision rendered by the United States Supreme Court is controlling here. *See Lebron v. National Railroad Passenger Corp.,* —— U.S. ——, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995). However, in *Amtrak,* the Court held that when the federal government "creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the First Amendment." *Id.* at —— – ——, 115 S.Ct. at 974–75. In the instant case, the federal government has not enacted a law to create Cablevision, nor does it have any authority to appoint any of Cablevision's directors.

was resumed on September 2, 1994. (Amended Complaint at 17). She further states that "[e]ach week the program has been cablecast without a hitch. Thomas Garger and assistant Dianne Bennett, in Hicksville where the cablecasting originates, have done their job impeccably and with cheer and good will, efficiency and quality." (*Id.*). While Glendora may seek to recover compensatory damages in this action, the Court finds no basis for punitive damages.

The motion to dismiss is denied. The defendants' motion to stay discovery is denied. The parties shall complete their discovery in accordance with the applicable rules. A case management conference will be held before this Court on October 20, 1995, at 11 a.m.

SO ORDERED.