OPINION OF THE COURT
Donald N. Silverman, J.
Plaintiff has brought suit seeking equitable relief and monetary damages. Plaintiff submitted program material to be cablecast by defendant Cable Systems Corporation on its Nassau County system access channel in the fall of 1993. After broadcasting a number of installments of this material, which apparently involved allegations of misconduct by a home improvement contractor, defendants unilaterally refused to cablecast the remaining installments. These facts are by and large conceded by defendants. Plaintiff seeks damages under various theories sounding largely in negligence and infringement of her constitutional rights. More particularly, plaintiff contends that defendants’ actions violate Executive Law article 28, § 829 (3).
Defendants have moved, in lieu of answering, to dismiss the complaint pursuant to CPLR 3211 (a) (5) and (7). In the alternative, defendants seek a declaratory judgment that Executive Law § 829 (3) unconstitutionally infringes defendants’ free speech interests and press rights, and, alternatively, is preempted by Federal law.
Plaintiff has cross-moved for an order directing defendant to cablecast the remaining portion of her programs, as well as in opposition to the motion to dismiss and for judgment on her complaint. In addition, plaintiff moves for discovery, for sanctions and for default. The motion for discovery is denied as moot. The motion for sanctions was denied by the court from the Bench on May 23, 1994. The motion for default is denied as defendants’ motion to dismiss was served within the time to answer (see, CPLR 3211 [e]).
At issue are the following. Firstly, whether Executive Law § 829 (3) is preempted by Federal law and regulation. Sec *169 ondly, if not, whether section 829 (3) is an unconstitutional abridgement of free speech rights of defendants. Thirdly, if the first two issues are answered in the negative, whether plaintiff’s claims of violation of her constitutional guarantees of freedom of speech and press are subject to collateral estoppel in light of her prior litigation in Federal court. Finally, whether plaintiff’s remaining claims for damages state causes of action or should be dismissed.
PREEMPTION
Executive Law § 829 (3) states: "No cable television company may prohibit or limit any program or class or type of program presented over a leased channel or any channel made available for public access or educational purposes.”
The Cable Communications Policy Act of 1984 (Pub L 98-549, adding 47 USC § 521 et seq.) states that subject to section 544 (d), "a cable operator shall not exercise any editorial control over any public, educational, or governmental use of channel capacity provided pursuant to this section.” (47 USC § 531 [e].) In turn, section 544 (d) states that nothing in this title, "shall be construed as prohibiting a franchising authority and a cable operator from specifying, in a franchise or renewal thereof, that certain cable services shall not be provided or shall be provided subject to conditions, if such cable services are obscene or are otherwise unprotected by the Constitution of the United States.”
The Cable Television Consumer Protection and Competition Act of 1992 (Pub L 102-385, amending 47 USC § 521 et seq.) expanded the permissible scope of editorial control a cable operator may exercise over its public educational and government access (PEG) channels. Under this Act, section 10 (c) (106 US Stat 1486) permits a cable operator to exercise editorial control over not only obscene materials, but materials containing sexually explicit conduct or materials soliciting or promoting unlawful conduct. In addition, editorial control over the above classes of programming can now be exercised regardless of whether such control is stipulated in the franchise or renewal.
The defendants contend that preemption is warranted because "compliance with both state and federal law is impossible.” (Capital Cities Cable v Crisp, 467 US 691, 699 [1984]; see also, Florida Avocado Growers v Paul, 373 US 132, 142-143 [1963].) Defendants do not allege that the franchise, or any *170 renewal, specifies the ability to edit programming of otherwise unprotected speech by the Constitution. The defendants do not contend that the plaintiffs program is obscene, sexually explicit, or that it solicits or promotes unlawful conduct. Absent such allegations, section 531 (e) of the Cable Communications Policy Act of 1984 forbids the cable operator from exercising editorial control over its PEG programming. The New York statute, Executive Law § 829 (3), also forbids such editorial control. Hence, there is no conflict between the operations of the respective statutes. In either case, the defendants are prohibited from exercising editorial control over PEG programming. Accordingly, the defendants’ motion to dismiss for failure to state a cause of action on the grounds that State law is preempted is denied.
ABRIDGEMENT OF DEFENDANTS’ SPEECH
In Leathers v Medlock (499 US 439, 444 [1991]) the Supreme Court recognized that cable operators are engaged in and transmit speech. As such they are entitled to the protections of speech and press under the First Amendment. However, such protections are not absolute. In Daniels Cablevision v United States (835 F Supp 1 [DC Dist Ct 1993]) the plaintiffs, cable operators and programmers, alleged that certain provisions of the Cable Communications Policy Act of 1984 infringed upon their First Amendment right to freedom of speech. Specifically, the plaintiffs therein alleged that section 531 (e), which prohibited operators from exercising editorial control over PEG programming (pursuant to section 544 [d]), "force[s] operators to engage in 'speech’ they might not otherwise undertake, and favor the speech of PEG programmers and nonaffiliates over that of the operators themselves or other programmers the government deems less worthy.” (Supra, at 6.) In assessing the constitutionality of this and other PEG provisions of the Cable Communications Policy Act of 1984, the court in Daniels held that these provisions were content-neutral and thus subject to the balancing test set forth in United States v O’Brien (391 US 367 [1968]) and Ward v Rock Against Racism (491 US 781 [1989]).
A content-neutral regulation will be sustained if "it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the *171 furtherance of that interest.” (United States v O’Brien, supra, at 377.) To satisfy this standard, the regulation need "not be the least restrictive or least intrusive means of doing so.” (Ward v Rock Against Racism, supra, at 798.) Rather, this requirement of narrow tailoring will be satisfied " 'so long as the * * * regulation promotes a substantial government interest that would be achieved less effectively absent the regulation’ ” (Ward v Rock Against Racism, supra, at 799; see also, United States v Albertini, 472 US 675, 689 [1985]).
In upholding the Act’s prohibition against editorial control of PEG programming, the court in Daniels (supra) held that protecting less marketable speaker’s access on cable systems was an important government interest and that the PEG provision was compatible with this interest. Nor did that court find that any of the PEG provisions were overreaching. Rather, the court found that operators retained discretion over the remaining channel capacity and could utilize them for their own programming decisions. Thus, the PEG provisions in the 1984 Act, including section 531 (e), were held constitutional under the O’Brien/Ward balancing test. Executive Law § 829 (3) contains a similar prohibition against editorial control over PEG programming. Such a regulation is also content-neutral and therefore must pass the O’Brien/ Ward test to survive constitutional scrutiny.
It is clear that imbedded in the various provisions of Executive Law article 28 is an intent to enhance and encourage public interest in cable television. The prohibition of censorship at issue here is part and parcel of that intent. This promotes a stated government interest in a way that places no limits or specifications on content of the programming. In this fashion the statute provides for "speakers with lesser market appeal [to have] access to the nation’s [State’s] most pervasive video distribution technology” (Daniels Cablevision v United States, supra, at 6).
While section 829 (3) may have an incidental effect on the First Amendment rights of cable operators, such incidental restriction does not necessarily render the statute constitutionally infirm. Incidental restrictions will be permitted so long as the "regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.” (Ward v Rock Against Racism, supra, at 799.) In this context, narrow tailoring requires that the means chosen do not "burden substantially more speech than is necessary to further the government’s legitimate interests.” (Supra, at 799.) *172 Without the prohibition on censorship, cable operators could edit any programming they did not wish to present regardless of its public interest. Such editorial control would harm the government’s interest in fostering public interest programming.
Executive Law § 829 (1) and (2) make clear neither the Commission on Cable Television nor any municipality can "prohibit or limit any program or any class or type of program” cablecast by cable operators. Thus cable operators retain editorial control over remaining channel capacity. In addition a cable operator "shall be permitted to use time on one or more PEG access channels whenever there are no blank channels available on the same level of service * * * and whenever such PEG channel(s) is not scheduled for use at least 72 hours in advance of such time or times desired by the cable television franchisee.” (9 NYCRR 595.4 [12].) This does not place a substantial burden on defendant Cable Systems Corporation. Therefore, it is clear that Executive Law § 829 (3) survives constitutional analysis under the OBrien/Ward balancing test.
The Supreme Court’s recent decision in Turner Broadcasting Sys. v Federal Communications Commn. (512 US —, 114 S Ct 2445 [1994]) does nothing to alter this constitutional analysis of section 829 (3). In that case, the Court addressed the constitutionality of the "must carry” provisions of the Cable Television Consumer Protection and Competition Act of 1992 which require cable television systems to devote a specified portion of their channels to the transmission of local commercial and public broadcast stations. The Court held that those provisions which impose special obligations and burdens on the speech of cable operators and programmers are subject to heightened First Amendment security. However, since the "must carry” provisions were content-neutral, they were subject only to the intermediate level of scrutiny set forth in O'Brien and Ward (supra). The Court remanded the case to the District Court with the burden on the Government to demonstrate that the recited harms were real, not merely conjectural, and that the "must carry” provisions did not burden more speech than is necessary to further the important Government interests. As the Court held, the correct level of scrutiny given to content-neutral regulation of speech is the O'Brien/Ward balancing test. Since section 829 (3) imposes no special obligations and is content-neutral it survives such scrutiny. Therefore, defendants’ motion to dismiss *173 for failure to state a claim, on the grounds section 829 (3) is unconstitutional, is denied.
COLLATERAL ESTOPPEL
In her second and ninth causes of action, plaintiff claims violation of her constitutionally protected rights to freedom of speech and freedom of expression of the press, respectively. It is to be noted that plaintiff is suing in her individual capacity only. Moreover, while the complaint asserts violations of basic constitutional rights it does not directly cite either the United States or the New York Constitutions. In consideration of plaintiff appearing pro se, this court presumes that she is alleging violations of her respective rights under both Constitutions.
At issue at the outset is whether plaintiff’s instant claims are collaterally estopped by the determinations of those proceedings initiated by plaintiff in Federal court. Collateral estoppel is premised on identical issues and a full and fair opportunity to contest those issues in the prior proceeding (Matter of Halyalkar v Board of Regents, 72 NY2d 261, 266). Here, the parties in the Federal proceeding are also before this court, albeit with two additional individual defendants. The issue was whether defendants had violated plaintiff’s rights of freedom of speech and press under the First Amendment of the United States Constitution. In a determination rendered by the Hon. Charles L. Brieant in the United States District Court for the Southern District of New York (93 Civ 8344, Feb. 18, 1994), it was found that plaintiff had not stated a claim under the United States Constitution as the defendants were found to be private persons and not State actors. "It is a firmly established principle of constitutional law that the state and federal constitutional guarantees of freedom of speech protect the individual against action by the governmental authorities, not by private persons” (20 NY Jur 2d, Constitutional Law, § 274, at 411; see also, SHAD Alliance v Smith Haven Mall, 66 NY2d 496, 502 [1985]). This is a basic issue underpinning much of plaintiff’s lawsuit. Plaintiff had a full and fair opportunity to litigate this same issue in the Southern District. Consequently, the instant action to the extent it is premised on the United States Constitution is collaterally estopped (see, Matter of Halyalkar v Board of Regents, 72 NY2d 261, 266 [1988], supra).
With respect to potential violations of plaintiff’s rights of *174 speech and press under New York Constitution, article I, § 8, the issues of whether the defendants are acting under color of State law are identical and collateral estoppel does apply.
This court finds that plaintiff has not demonstrated that any of the defendants are State actors. In considering this issue the court notes the criteria employed in determining whether State action exists: (1) the source of authority for the private action; (2) whether the State is so entwined with the regulation of the private conduct as to constitute State activity; (3) whether there is meaningful State participation in the activity; and (4) whether there has been a delegation of what has traditionally been a State function to a private person (SHAD Alliance v Smith Haven Mall, supra, at 505).
The private action being regulated is cablecasting. The State’s involvement with this is a set of statutory and regulatory laws specifying what defendant cablecast operator is allowed to do. These laws do not create any power or authority on the part of any of the defendants that they did not already have. Although a cable company is considered a public utility this does not imbue any of the defendants with the power or authority of the State (see, Montalvo v Consolidated Edison Co., 92 AD2d 389, 396, 397 [1st Dept 1983]). Consequently, the second and ninth causes of action are dismissed.
REMAINING CAUSES OF ACTION
With respect to plaintiff’s third, fifth and seventh causes of action, the court finds that they fail to state cognizable claims distinct from her other causes of action. Accordingly, they are dismissed.
Plaintiff’s fourth cause of action alleges that the defendant was negligent in cancelling her scheduled programming. Negligence can be defined as the "unintentional, breach of a legal duty causing damage reasonably foreseeable, without which the damage would not have occurred.” (79 NY Jur 2d, Negligence, § 1, at 306-307.) The complaint does not allege, nor do the undisputed facts indicate, that the defendants’ actions were unintentional. Rather, the facts clearly demonstrate that the defendants intentionally cancelled the plaintiff’s scheduled program. Accordingly, the defendants’ motion to dismiss the fourth cause of action for failure to state a cause of action is granted.
Plaintiff’s sixth cause of action alleging damage to her *175 reputation is in effect a claim for defamation. Defamation requires a party to commit libel or slander. (43 NY Jur 2d, Defamation and Privacy, § 1.) Libel is defined as a "publication, expressed in printing or writing or by symbols or pictures, concerning a living person which is false and tends to injure his reputation and thereby expose him to public hatred, contempt, scorn, obloquy, or shame.” (Id., § 1, at 498.) Slander is the remedy given for injuries affecting "a person’s reputation or good name by malicious or scandalous words.” (Ibid.) The complaint does not allege, nor do the facts indicate that the defendants engaged in either libel or slander. Therefore, the defendants’ motion to dismiss for failure to state a cause of action is granted.
Plaintiff’s eighth cause of action makes reference to both negligent infliction of mental disturbance in the absence of physical impact and the intentional infliction of emotional distress. New York law recognizes that freedom from mental disturbance is a protected interest, and recovery for mental disturbance in the absence of a physical impact is permitted if "the mental injury is marked by definite physical symptoms that are capable of clear medical proof.” (61 NY Jur 2d, Fright, Shock, and Mental Disturbance, § 1, at 503.) In the present case, the plaintiff does not contend, nor do the facts support a finding that the plaintiff suffers from any definite physical symptoms purporting to indicate any mental injury caused by the defendants’ conduct. Accordingly, the defendants’ motion to dismiss for failure to state a cause of action is granted.
For the aforestated reasons plaintiff’s cross motion to compel the cablecasting of her program material is granted, and the action is otherwise dismissed.