**GLENDORA, Plaintiff,**

v.

**Barry MARSHALL, Brian Sullivan, Scott Brown, John Wicker, Myles Rich and any John or Jane Doe defendants may claim as necessary party and UA–Columbia Cablevision of Westchester, Inc. d/b/a TCI Cable of Westchester, Defendants.**

No. 96 Civ. 0140 (JSR).

United States District Court,
S.D. New York.

Nov. 12, 1996.

Glendora, White Plains, NY, Pro Se.

Ben Wiles, Cohen, Dax, Koenig & Wiles, P.C., Albany, NY, for Defendants.

### MEMORANDUM ORDER

RAKOFF, District Judge.

Glendora produces and hosts the public-access program "A Chat With Glendora," which is broadcast on cable television in the Westchester, New York area. For at least the past two years she has also been a frequent *pro se* litigant in the state and federal courts of New York, complaining of various changes in public-access cable programming that she alleges have unlawfully restricted the distribution of her program and injured her and the public in a variety of ways.[1]

Struck by plaintiff's energy and tenacity, the Court has paid close attention to her claims and submissions. But courts have only a modest role in the regulation of cable broadcasting. If producers like Glendora are the stars, judges are but bit players, and have little power to interfere. Specifically, in the instant case the Court is without lawful power to afford relief on the stated allegations of the Complaint and therefore must dismiss the action.

The facts of the case are fully set forth in the prior decisions of the Honorable William C. Conner—*Glendora v. Malone*, 917 F.Supp. 224 (S.D.N.Y.1996); *Glendora v. Malone*, 911 F.Supp. 142 (S.D.N.Y.1996)—full familiarity with which is assumed.[2] The case was referred for pre-trial purposes to the Honorable Mark D. Fox, United States Magistrate Judge, who on August 5, 1996 submitted a Report and Recommendation denying various motions made by plaintiff and granting the motion of defendants to dismiss the amended complaint for failure to state a claim or, in the alternative, for summary judgment. On August 19, 1996, plaintiff submitted a two-volume objection to the Report and Recommendation, and defendants responded by written submission on September 6, 1996. On September 27, 1996, the Court heard substantial oral argument by the parties on the motions addressed in the Magistrate's Report, and, additionally, the Court addressed various new motions that had arisen since the filing of the Report. After receipt of still further written submissions, the Court undertook *de novo* review of the underlying record.

Based on that review, the Court concludes that, while several of plaintiff's motions may have merit, they are rendered moot by the defendants' motion, which the Court is obliged to grant. It does so essentially for the reasons set forth in Judge Fox's Report, which is hereby incorporated by reference. Only a few added words are in order.

■ Plaintiff alleges both federal and state causes of action. With respect to plaintiff's first federal claim, pursuant to 42 U.S.C. § 1983, alleging that the defendants violated her rights under the First and Fourteenth Amendments to the U.S. Constitution, one is confronted with a threshold failure to demon-

1. *See Glendora v. Magness*, 1996 WL 631713 (S.D.N.Y.1996); *Glendora v. Malone*, 165 F.R.D. 42 (S.D.N.Y.1996); *Glendora v. Malone*, 917 F.Supp. 224 (S.D.N.Y.1996); *Glendora v. Hostetter*, 916 F.Supp. 1339 (S.D.N.Y.1996); *Glendora v. Malone*, 911 F.Supp. 142 (S.D.N.Y.1996); *Glendora v. Cablevision Sys. Corp.*, 893 F.Supp. 264 (S.D.N.Y.1995); *Glendora v. Dolan*, 871 F.Supp. 174 (S.D.N.Y.1994); *Glendora v. Walsh*, —— A.D.2d ——, 642 N.Y.S.2d 545 (N.Y.App.Div. 1996); *Glendora v. Kofalt*, —— A.D.2d ——, 637 N.Y.S.2d 780 (N.Y.App.Div.1996); *Glendora v.*

*CBS, Inc.*, 213 A.D.2d 594, 624 N.Y.S.2d 254 (N.Y.App.Div.1995); *Glendora v. Kofalt*, 162 Misc.2d 166, 616 N.Y.S.2d 138 (N.Y.Sup.Ct. 1994).

2. Judge Conner subsequently granted plaintiff's motion that he recuse himself, after which the case was assigned to this judge. Plaintiff's subsequent motion that this judge recuse himself was thereafter withdrawn by plaintiff. Sept. 27, 1996 Tr. at 3.

strate that the alleged violations by defendants occurred under "color of state law." *See Glendora v. Cablevision Sys. Corp.,* 893 F.Supp. 264, 269 (S.D.N.Y.1995). The defendants in this action are private persons and entities who, under settled precedent binding on this Court, cannot be regarded as "state actors" under either a "state-function" or "symbiotic relationship" approach to the state action doctrine. *See Jensen v. Farrell Lines, Inc.,* 625 F.2d 379, 384 (2d Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981).

It is true that a private actor may be considered a state actor if "the conduct of the private actor is equivalent to the performing of a state function ... traditionally associated with sovereignty." *Jensen,* 625 F.2d at 384. But as Judge Brieant has previously held in a related case, the defendants here do not qualify as "state actors" under this approach because "[t]he ownership and operation of an entertainment facility are not powers traditionally exclusively reserved to the State, nor are they functions of sovereignty." *Glendora v. Cablevision Sys. Corp.,* 893 F.Supp. 264, 269 (S.D.N.Y.1995).

■ Likewise, there is here no so-called "symbiotic relationship" as the relevant case law defines it. The defendants here and the state are not "so significantly involved with one another as to render [defendants] subject to the constitutional responsibilities of the state." *Jensen,* 625 F.2d at 384. "That a cable company is subject to state and federal regulations, or operates pursuant to a franchise, does not transform its actions, including decisions to cancel public access programs, into actions of the government." *Glendora v. Cablevision Sys. Corp.,* 893 F.Supp. at 269; *see also Glendora v. Kofalt,* 162 Misc.2d at 166, 616 N.Y.S.2d 138.

■ The record is also devoid of any evidence that would support plaintiff's claim of discrimination under 42 U.S.C. § 1981. Indeed, this part of the Complaint merely alleges that "[t]his action arises under the First and Fourteen Amendments to the United States Constitution" and that "plaintiff seeks redress for the violation of her Federal Constitutional and civil rights." Complaint ¶¶ 5–6. Yet "[e]ssential to an action under

Section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially motivated." *Albert v. Carovano,* 851 F.2d 561, 571 (2d Cir.1988) (citations omitted). Even a *pro se* plaintiff must allege some such allegations to avoid dismissal, and none is alleged here.

■ As her final federal claim, plaintiff alleges a violation by defendants of 47 U.S.C. § 531(e), which states that "a cable operator shall not exercise any editorial control" over public access channels. This statutory provision, however, was not implicated by defendants' decision to change the distribution of public access television. Thus, because plaintiff has not demonstrated how a change in the method for disseminating her program to the public affects the content or substance of her show, her § 531(e) claim must fail. *Cf. Glendora v. Hostetter,* 916 F.Supp. 1339, 1341–42 (S.D.N.Y.1996) (denying injunction of alleged editorial control by cable company).

■ Turning to plaintiff's state law claims, while the Court could have dismissed these on jurisdictional grounds, Judge Fox recommended retaining supplemental jurisdiction over them but then found them deficient on the merits. The Court concurs in both respects.

■ Plaintiff's claim for violation of the anti-censorship provisions of N.Y.Pub.Serv. Law § 229(3) (originally enacted as N.Y.Exec.Law § 829(3)) fails because, as explained in the denial of plaintiff's federal § 531(e) claim above, defendants have exercised no editorial control of plaintiff's show.

■ Plaintiff's claim that defendants violated N.Y.Pub.Serv.Law § 226 (originally enacted as N.Y.Exec.Law § 826) by changing the distribution of her program without first providing notice to her must also be dismissed. The statute requires that a cable television company provide six months notice before abandoning any service or portion thereof. Changing the manner in which a service is provided, however, does not constitute abandonment of a service. Moreover, the statute requires notice to be given "to the commission and to the franchisor, if any, and

to the municipalities." Assuming arguendo that changing distribution of a program constitutes abandonment of a service, plaintiff nevertheless falls outside the class of persons entitled to notice of such "abandonment."

■ Plaintiff's claims that defendants violated N.Y.Comp.Codes R. & Regs. tit. 9, § 595.4, which establishes the state's minimum requirements for public access to cable programming, also fails, because each municipality will continue to provide at least one public access channel.

Plaintiff's common law claims for infliction of emotional distress, defamation, and negligence are inadequate both on the face of the Complaint and in light of her subsequent voluminous submissions to the Court. *See generally, Glendora v. Walsh,* —— A.D.2d ——, 642 N.Y.S.2d 545 (App.Div.1996); *Glendora v. CBS, Inc.,* 213 A.D.2d 594, 624 N.Y.S.2d 254 (App.Div.1995); *Glendora v. Kofalt,* 162 Misc.2d 166, 616 N.Y.S.2d 138 (Sup.Ct.1994).

■ As to her emotional distress claim, plaintiff fails to point to any conduct by defendants that is "so outrageous in character, and so extreme in degree" as to arguably support her claim of intentional infliction of emotional distress. *See Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). Likewise, plaintiff's claim of negligent infliction of emotional distress must fail because she cannot demonstrate any conduct by defendants that could have unreasonably endangered the safety of plaintiff or put her in fear of her life. *See Buckley v. Metro–North Commuter R.R.,* 79 F.3d 1337, 1343 (2d Cir.1996); *Cucchi v. New York City Off-Track Betting Corp.,* 818 F.Supp. 647, 656 (S.D.N.Y.1993).

■ Plaintiff's claim that the "black out" of her program constitutes an action in defamation must likewise be dismissed. Plaintiff has failed to make out a prima facie case in either libel or slander, for she cannot point to any written or spoken statements by defendants that could be construed as false or defamatory. *See Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61 (2d Cir.1993); *Box Tree South Ltd. v. Bitterman,* 873 F.Supp.

833, 844 (S.D.N.Y.1995). Even if mere acts were cognizable under the defamation cause of action, none of the deeds or actions by defendants here alleged is "reasonably susceptible of a defamatory meaning, [and thus is] not actionable and cannot be made so by a strained or artificial construction." *Kirkland v. City of Peekskill,* 634 F.Supp. 950, 953 (S.D.N.Y.1986).

■ Finally, plaintiff cannot sustain an action in negligence against the defendants because defendants owed her no cognizable legal duty. Where a plaintiff fails to introduce evidence legally sufficient to establish this essential element, the action in negligence must be dismissed. *See Febesh v. Elcejay Inn Corp.,* 157 A.D.2d 102, 555 N.Y.S.2d 46 (N.Y.App.Div.1990).

While the granting of defendants' motion to dismiss renders moot plaintiff's various motions and appeals from Judge Fox's denials of her motions, the Court has nevertheless carefully considered each in turn and notes the following for purposes of any appeal that may follow. Those of plaintiff's motions that appear without merit, together with the reasons why they would have been denied, are as follows:

■ —Plaintiff's motion for a preliminary injunction "enjoining [defendants] from continuing to prohibit 'A Chat with Glendora' from Channel 8 every Tuesday, 9 p.m., and from restoring Channel 8 to what it was April 30, 1996," Plaintiff's Notice of Motion at 2–3, would have been denied, both because plaintiff has failed to demonstrate a likelihood of success on the merits of this case, for the reasons articulated above, and also because plaintiff has failed to demonstrate any irreparable harm. *Cf. Glendora v. Malone,* 911 F.Supp. 142 (S.D.N.Y.1996) (denying plaintiff's prior motion for preliminary injunction).

■ —Plaintiff's motion that defendants are in default for failure to appear would fail because Ben Wiles, Esq. has defended the case within the meaning of Fed.R.Civ.Proc. 55(a) on behalf of all defendants from the commencement of this action until its dismissal on the date hereof.

■ —Plaintiff's motion to reconsider the decision of Judge Conner to grant defendants' prior motion for improper joinder of certain defendants in this case, *see Glendora v. Malone,* 917 F.Supp. 224 (S.D.N.Y.1996), would fail because it is not supported by additional evidence to suggest that those defendants belong in this action and therefore affords no reason for disturbing the law of the case.

■ —Plaintiff's motion to add as defendants various directors and officers of defendant TCI Cable and its parent company TCI Communications, namely Jerome H. Kern, R.E. Turner, Fred A. Vierra, Stephen M. Brett, Peter R. Barton, Larry E. Romrell, Gary K. Bracken, Bernard W. Schotters, and J.C. Sparkman, would likewise fail, as these putative defendants fall into the same category as those defendants that Judge Conner ruled misjoined in his prior decision.

By contrast, those of plaintiff's motions that appear to have merit, and the reasons why they would have been granted, are as follows:

■ —Plaintiff's request for defendants to provide her with a list of the individual defendants' home addresses, as required by Local Rule 2 of the Southern District of New York, should have been complied with pursuant to Judge Conner's Order of February 26, 1996, *Glendora,* 917 F.Supp. at 230. The Court disagrees with the suggestion made at oral argument that there is any material evidence that Glendora is a physical threat to those defendants. The Court notes, however, that plaintiff was not prejudiced by defendants' failure to comply with the Court order, since, throughout this litigation, plaintiff has successfully communicated with the opposing parties through their designated counsel, and there was no harm to plaintiff's case resulting from deprivation of the information sought.

—Plaintiff's motion to compel defendants to produce transcripts of the depositions taken of plaintiff and her husband, Franklyn Buell, would, in the discretion of the Court, likely have been granted.

—Finally, defendants' motion seeking discovery with respect to Glendora's *in forma pauperis* status in this case would have been denied.

For the aforementioned reasons, the Complaint is hereby dismissed. Clerk to enter judgment.

SO ORDERED.

Dated: White Plains, New York
　　　　November 12, 1996

### *REPORT AND RECOMMENDATION*

FOX, United States Magistrate Judge.

Plaintiff discovered the allegedly foul deed in this matter through an endorsement on her TCI Cable of Westchester ("TCI") cable television bill for 12/95–1/96:

> In accordance with FCC "must carry" regulations, on February 1, 1996, WRNN [Kingston, New York] will be added to our lineup on channel 19. The electronic program guide presently on this channel will move to channel 8, replacing the system wide public access channel. Public access (as well as education and government access) programming will still be available on your local municipal access channels.

Complaint ¶ 26 at 9. A letter from TCI to Plaintiff, dated December 15, 1995, which Plaintiff claims she did not receive until December 28, 1995, reiterated the "must carry" status of WRNN and advised that programming on channel 19 would be moved to channel 8 and that,

> A channel will be kept available at all times for the distribution of public access program materials in every community [TCI] serves in Westchester. Enclosed is a list of all the local municipality public access contacts.

The letter and list have been included as exhibits within the body of the complaint.

According to Plaintiff, who is the producer and host of the program, "A Chat With Glendora", this development alters the method for the distribution and broadcast of her show. Essentially she charges that TCI, a cable provider in communities in Westchester County has deprived all public access producers of the only system wide public access channel. The net result is the onerous burden of having to make seventeen (17) "dubs" of each program, which must then be distributed to seventeen (17) individual local access

channels, which she surmises may not wish to carry this load because they cannot "afford the payroll to cablecast these programs dumped on them." Complaint ¶ 40. The time necessary to accomplish this endeavor is alleged to be thirty-four (34) hours plus gasoline, wear and tear on Plaintiff's automobile and parking fees. She further alleges that the motive behind the change is to persuade the public to hate the Federal "must carry" rules and asserts that TCI could put WRNN on one of its revenue producing channels. From this event Plaintiff derives six (6) claims for relief: (1) Because the operation and administration of the public access channel in Westchester communities is an exclusive governmental function, TCI's usurpation of channel 8 constitutes state action which violates Plaintiff's First and Fourteenth Amendment rights to free speech; (2) TCI's usurpation of channel 8 violates Plaintiff's right to be free from editorial control pursuant to 47 U.S.C. § 531(e) and as accomplished under color of state law violates 42 U.S.C. §§ 1981 and 1983; (3) Regardless of whether TCI's action is taken under color of state law, it violates the prohibition against cable operator control set forth in 47 U.S.C. § 531(e); (4) a pendent claim for infliction of emotional distress; (5) a pendent claim for negligence; and (6) a pendent claim for defamation. These six (6) claims have separate headings. There may also be a pendent claim(s) that the change violates N.Y.Pub. Serv.Law §§ 226 and 229 (formerly N.Y.Exec.Law §§ 826 and 829) and regulations concerning standards for cable television franchises, 9 N.Y.C.R.R. § 595.4.

The instant litigation has not come to your Honor in a virgin state. The caption herein has been amended to reflect the dismissal of various defendants by Judge Conner, who subsequently declined to certify those dismissals for interlocutory appeals pursuant to Fed.R.Civ.P. 54(b). *Glendora v. Malone,* 166 F.R.D. 6 (S.D.N.Y.1996). Judge Conner has also denied Plaintiff's application for preliminary relief. *Glendora v. Malone,* 911 F.Supp. 142 (S.D.N.Y.1996); *Glendora v. Malone,* 165 F.R.D. 42 (S.D.N.Y.1996). The allegations underlying Plaintiff's claims are set forth in Judge Conner's comprehensive opinion on prior motions, familiarity with which is assumed. *Glendora v. Malone,* 917 F.Supp. 224, 226 (S.D.N.Y.1996). The matter is before the Court on: (1) Plaintiff's May 14, 1996 submission (doc. # 57), which raises six (6) different motions; (2) the notice of motion of UA–Columbia Cablevision of Westchester ("UA–Columbia") dated February 22, 1996, which seeks dismissal of the amended complaint (doc. # 10) for failure to state a claim or in the alternative summary judgment; and (3) the joinder in motion and notice of cross-motion and cross-motion (doc. # 27) by Marshall, Brown, Sullivan, Wicker and Rich, which also seeks dismissal of the amended complaint for failure to state a claim or in the alternative summary judgment. The Court turns first to Plaintiff's motions.

Plaintiff's first application demonstrates a remarkable opacity for what is apparent to any reasonable person who views the record. She contends that the defendant which Ben Wiles, Esq. claims to represent is not a party to the action and therefore the defendants are in default. The record discloses that the firm of Cohen, Dax, Koenig & Wiles, P.C. through Ben Wiles, Esq. has taken action in the case on behalf of all of the defendants; most notably, motion practice which the rules permit prior to the filing of an answer. Wiles Decl. ¶¶ 2–7 (reciting relevant portions of the record). Contrary to Plaintiff's assertion the defendants have defended this case through counsel within the meaning of Fed. R.Civ.P. 55(a) and are not in default. The undersigned has recognized Mr. Wiles' capacity as the representative of the defendants, as did Judge Conner when the case was before him. I respectfully recommend that your Honor also recognize Mr. Wiles' appearance for the defendants and deny Plaintiff's motion for a default.

Plaintiff next revisits Judge Conner's decision to dismiss defendants from the case for improper joinder: "Glendora wants her defendants back, Rule 19, FRCP." Plaintiff's Notice of Mot. at 3. She contends that they should not have been dismissed prior to her taking discovery and observes, as if the point were truly relevant, that the dismissal of defendants for misjoinder has not occurred in her other lawsuits. Prior to granting the

motion for improper joinder, Judge Conner specifically stated:

> In evaluating defendants' arguments, we are mindful that plaintiff is proceeding *pro se* and has not yet had the opportunity for discovery. Therefore, we will not dismiss any defendant unless it is clear that discovery would not likely reveal facts demonstrating that the defendant participated in deciding to reallocate Channel 8.

917 F.Supp. at 227. Plaintiff's current submissions add nothing to the record and provide no basis for your Honor to reconsider Judge Conner's ruling concerning misjoinder of defendants.

Judge Conner's ruling should not have come as a complete surprise to Plaintiff. In earlier cable television litigation, which was duplicitous of a case assigned to Judge Brieant, Judge Broderick had advised as follows:

> Although the complaint is dismissed in its entirety, a concern must be expressed concerning the practice evident in the present complaint of including large numbers of individual defendants whose presence appears to be unnecessary to afford whatever relief might be appropriate should plaintiff prevail. Such action does not promote the "just, speedy and inexpensive" determination of the case which the court is directed to seek under Fed. R.Civ.P. 1.

*Glendora v. Dolan,* 871 F.Supp. 174, 177 (S.D.N.Y.1994), *aff'd,* 48 F.3d 1212 (2d Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995).

Plaintiff's rambling reply submission on this point is replete with irrelevant material and evidences ignorance of Federal practice. If she loses the case, she may be able to challenge Judge Conner's ruling on misjoinder in an appeal following the entry of a final and appealable judgment.

Plaintiff next moves to add defendants, each of whom is either a director or an officer of TCI or TCI Communications, Inc. In response to the argument that these individuals fall into the same category as the defendants Judge Conner ruled had been misjoined, Plaintiff offers a tirade of scandalous and wholly unsubstantiated accusations against defendants' attorney and Judge Conner. The record contains no evidence of collusion between the attorney and Judge Conner and no evidence that Judge Conner is a shareholder of the defendant corporation.

Plaintiff asserts that she became a shareholder and obtained the annual report which reveals that the individuals sought to be added as defendants, ".... those are the people who make the decisions." Plaintiff's Reply Aff. at 14.[1] Plaintiff has not submitted the appropriate portion of the annual report to which she refers and has not submitted any evidence, as opposed to speculation, guesswork, and/or assertion, that the proposed defendants have any relevance to this lawsuit.[2]

Plaintiff's next request is impractical at best. The undersigned has no authority to prevent your Honor or any of your Honor's staff from communicating by telephone with defendants' attorney without Glendora being present either in person or on a conference call. Her view of the history of communications with Judge Conner's chambers furnishes little basis for your Honor to exercise the discretion possessed of any United States District Judge to control/manage attorneys' and litigants' communications with chambers. Plaintiff apparently has forgotten that her *ex parte* telephone communications and visits and her husband's *ex parte* telephone communications and visits have been handled by my staff with the same professional courtesy afforded to all attorneys and *pro se* litigants in cases assigned to this office. Accordingly, in the event your Honor imposes the limitation on communications requested by Plain-

---

1. Parenthetically, although entitled or captioned an affidavit, the document is unsworn and is, at best, a reply memorandum.

2. Again, as an aside, because Plaintiff's observations in her Reply Aff. at 15 are irrelevant, her use of "any John or Jane Doe Defendants may claim as a necessary party" in the caption does

not incorporate these proposed defendants into the lawsuit. Additionally, whether Plaintiff's television program has not been seen in eighteen (18) Westchester communities, or is ever seen or aired again in this county, does not make these individuals proper defendants in this case.

tiff, I shall have no choice but to impose the same limitation.

Relevant to Plaintiff's fifth application, in his decision of February 26, 1996 Judge Conner ruled as follows:

> Pursuant to Local Rule 2, plaintiff has requested that this court order defendants to provide her with a list of defendants' home addresses.... Glendora's application does not state whether she has requested this information from the defendants or whether they have failed to comply with that request. Nevertheless, in the interests of efficiency and given that plaintiff is clearly entitled to the information that she seeks, we hereby order defendants to furnish to plaintiff, within 10 days of the date of this order, the post office address and residence of each of the remaining defendants.

917 F.Supp. at 230. As is apparent from the context, Judge Conner had directed the defendants to furnish this information without their input. For this reason, among others, Judge Conner referred this matter to the undersigned to supervise pretrial matters (doc. # 18, filed 3/12/96). After reviewing the parties' submissions and listening to oral argument on May 3, 1996, I set forth a ruling on this issue on the record. Wiles Decl.Exh. K (Tr. 5/3/96 at 14–16).

██ Local Rule 2 provides in relevant part:

> A party shall furnish to any other party, within five (5) days after a demand, a verified statement setting forth said party's post office address and residence.... Upon non-compliance with the demand, the court, on *ex parte* application, shall order the furnishing of the statement, and in a proper case, on motion, may direct that the proceedings on the part of the non-complying party be stayed, or make such order as justice requires.

Although Plaintiff still has failed to cite the portion of the record containing her demand for the defendants' addresses, in light of Judge Conner's decision and the oral arguments at the May 3, 1996 conference, I concluded, without specifically addressing the issue, that such a demand had been made and therefore the issue was ripe for the entry of "such order as justice requires." Plaintiff has offered nothing to demonstrate that the circumstances which persuaded me to limit the defendants' disclosure to county and state of residence have changed in the interim.[3] If defendants wish to limit their contact with Plaintiff concerning this lawsuit to communications through their attorneys, they have a right to do so.

Plaintiff's sixth claim for relief, *verbatim:*

> 6) Preliminarily enjoining Malone, Magness, TCI, et al from continuing to prohibit and limit "A Chat with Glendora" from Channel 8 every Tuesday, 9 pm, and from restoring Channel 8 to what it was April 30, 1996.

Plaintiff's Notice of Mot. at 2–3. In his decision dated January 23, 1996, which denied Plaintiff's application for a preliminary injunction in this matter, Judge Conner found as follows:

> Plaintiff alleges that as of February 1, 1996, defendants plan to cease their current practice of broadcasting public access programming on Channel 8 simultaneously in each municipality for which defendants provide cable service. Instead, each municipality will determine at what time and on what channel public access programming will be viewed....
>
> We have serious questions about the likelihood that she will succeed on the merits of her claims. Defendants contend that the applicable state and federal regulations require them to provide at least one public access channel *per franchise area. See* 47 U.S.C. § 531; N.Y.Exec.Law, tit. 28, § 815(b) 9 N.Y.C.R.R. § 595.4 (emphasis added). Defendants contend that the contemplated restructuring of public access

---

**3.** Again, as an aside, whether your Honor wishes to treat Plaintiff's submission of May 14, 1996 and subsequent reply, dated June 10, 1996, as objections to my ruling concerning the defendants' disclosure of their addresses lies entirely within your Honor's discretion. Whatever conclusion your Honor may reach, Fed.R.Civ.P. 60(b), relied upon by plaintiff, is not the vehicle for challenging a magistrate judge's discovery ruling. *See* 12 Wright, Miller & Elliott, Federal Practice and Procedure: Civil § 3076.6 (1996 pocket part at 49).

programming will meet this standard because each franchise area, i.e., each municipality, will continue to provide at least one public access channel. Plaintiff was not able to provide the court with a convincing argument to the contrary....

[W]e have some doubts as to whether plaintiff has demonstrated a likelihood of irreparable harm if we do not grant the requested relief. While irreparable harm usually results when the First Amendment is violated, we are not persuaded that plaintiff's First Amendment rights are implicated in this case. She is not alleging that she is being prevented from speaking, or even that she is being prevented from speaking on public access television. Instead, she asserts that the restructured public access programming will impose substantial new burdens on her in distributing her program to the same audience that she now enjoys. We do not doubt that her show will be less visible if it is broadcast at different times and on different channels in the various municipalities. At this time, however, there is no way to predict how great the burdens on plaintiff may be or to estimate the changes in the distribution of her program that may occur. In the absence of such evidence, and in view of the fact that defendants have represented that they will—within the framework of the requirements of the applicable federal and state laws—use all reasonable efforts to facilitate the distribution of plaintiff's program, we find that plaintiff has failed to establish a probability that she will suffer irreparable harm in the absence of a preliminary injunction....

[W]e deny plaintiff's motion for a preliminary injunction without prejudice. Plaintiff may renew her motion in the event that after February 1, 1996, defendants do not provide plaintiff with reasonable access to the public access channels of the various municipalities, consist[ent] with the defen-

dants' obligations under the applicable federal and state laws and regulations.

911 F.Supp. at 142, 142–143, 143. In fact, TCI did not effectuate the change of which Plaintiff complains until after May 1, 1996. Absolutely nothing in the diatribe/tirade which she offers in her Reply Aff. at 24–34 changes the state of the record. Her reference to your Honor as "autistic" insults my intelligence as does her allusion to coddling lawbreakers in "Judge Baer style". Her recitation of her perception of prior events in this litigation is irrelevant to this issue. Her invocation of the youthful lives sacrificed in defense of the United States is irrelevant to this issue. Her success in persuading the Court of Appeals to reverse and remand Judge Brieant's dismissal of her complaint in a different case in this Court is irrelevant to this issue. In sum: (1) Judge Conner succinctly advised her of the evidence necessary to obtain a preliminary injunction; (2) The undersigned has supervised discovery, most of which has not been focused on obtaining that evidence or much other relevant evidence; (3) Consequently, the record still fails to disclose anything which changes the conclusion reached by Judge Conner. Plaintiff has not demonstrated that she is entitled to a preliminary injunction in this case.

 I have addressed Plaintiff's applications in this matter first because they and her behavior throughout the proceedings amply illustrate two maxims: the one about the individual who represents herself and the one about a little bit of knowledge being a dangerous thing. Her strategy of adding her editorial comment to a cut and paste work up of the opposition's papers does not furnish an adequate substitute for the evidence required by Fed.R.Civ.P. 56(e) to survive a motion for summary judgment. For example, she repeatedly accuses John Wicker, TCI's interim general manager, of lying in his affidavit.[4] She offers no evidence, including no foundation, of how she can testify that his averments are not truthful. She reiterates her entitlement to discovery, as if invoking a

---

**4.** Wicker's affidavit is based upon his personal knowledge or upon information and belief. He has not identified which paragraphs fall into which category, and Plaintiff has not formally moved to strike the affidavit. *See Sellers v. M.C.*

*Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir. 1988). The Court has not considered any averment which lacks an appropriate foundation to demonstrate that it has been made on Wicker's personal knowledge.

mantra, and repeatedly demands the opportunity to examine the defendants, including Wicker, in open court without the benefit of material prepared by their attorneys and seemingly assumes that if the Court discredits their testimony, she will prevail. In response to a motion for summary judgment, a Plaintiff has the burden of establishing a prima facie case or setting forth the specific discovery necessary toward uncovering evidence which will create a genuine issue of material fact. Plaintiff has not met nor addressed either burden, in part, because Defendants' motion has been made relatively early in the case. In light of the timing of the motion, the facts have been taken from the complaint, which, even under a liberal construction fails to state a claim for which relief may be granted as to each of its causes of action. If Plaintiff has conducted any discovery relevant to facts of which she was obviously aware prior to the filing of the complaint, the undersigned, despite the substantial time devoted to this case has not been apprised of the event.

Plaintiff also refuses to focus on the issues properly before the Court, and when she does not obtain whatever she requests/demands, she assumes, without any basis, that an impropriety or bad motive underlies the Court's ruling. These observations have not been offered to criticize Plaintiff's tactics, because she certainly has the right to have her claims evaluated in this Court and, like any other obstinate litigant who fails to follow Rule 56, to lose without a trial. The substantive burdens of Rule 56, *i.e.*, evidence admissible at a trial must be submitted which creates a genuine issue of material fact, apply to *pro se* Plaintiffs. *See, e.g., Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986). Plaintiff will have only one more opportunity, in the objections filed in response to this report and recommendation, to change the manner in which she pursues her interests in this case. On the current state of the record, the relevant and material facts are not in dispute; as a result, if Plaintiff has any evidence which creates a genuine issue of material fact and thereby entitles her to a trial on a claim(s) raised in the complaint, she should submit it to your Honor in a form appropriate to establish its admissibility.

*See Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983); *Williams v. Borough of Manhattan Community College,* No. 94 Civ. 4304 (RWS) (S.D.N.Y. Jan. 12, 1996) (1996 Westlaw 11785). With that advice, I turn to Defendants' motions.

At the outset, the pendent claims for infliction of emotional distress, negligence and defamation/libel are inadequate on their face and should be dismissed. *Glendora v. Walsh,* —— A.D.2d ——, 642 N.Y.S.2d 545 (2d Dep't 1996) (mem.); *Glendora v. Kofalt,* 224 A.D.2d 485, 637 N.Y.S.2d 780 (2d Dep't 1996) (mem.); *Glendora v. CBS, Inc.,* 213 A.D.2d 594, 624 N.Y.S.2d 254 (2d Dep't 1995) (mem.), *lv. denied,* 86 N.Y.2d 701, 631 N.Y.S.2d 605, 655 N.E.2d 702 (1995). The complaint also fails to state anything relevant to a claim under 42 U.S.C. § 1981.

After considering the parties' submissions, I respectfully recommend that your Honor adopt the position advanced by Judge Brieant in *Glendora v. Cablevision Systems Corp.,* 893 F.Supp. 264, 269–270 (S.D.N.Y. 1995) with respect to the state action requirement of 42 U.S.C. § 1983. Contrary to Glendora's allegation, neither the State of New York nor the Federal Government have undertaken to provide cable television as a governmental service by regulating that industry nor have the municipal franchisors undertaken the same as a governmental function by virtue of granting the provider a franchise. To the authorities cited by Judge Brieant, I add the unpublished decision in *Templin v. Times Mirror Cable Television, Inc.,* 56 F.3d 73, 1995–1 Trade Cases ¶ 71,040 (9th Cir. 1995) (1995 Westlaw 314607 at *3). Similar to *Templin,* the instant complaint contains no allegation, and the record contains no proof, that any governmental agency had anything to do with TCI's decision to change the programming on channel 8.

Without any specificity, Plaintiff does assert in her affidavit in opposition to the Defendants' motions at 13 that official pressure from unidentified Westchester public officials prompted TCI's decision to take her off the air. It is possible that Plaintiff has confused the allegations in this case with allegations she has made in the cases pending before

Judge Brieant or Judge Parker; nevertheless, Plaintiff has not offered any admissible evidence that TCI did not replace the programming on channel 8 with the programming on channel 19 so as to put WRNN, Kingston, New York, a "must carry" station, on channel 19. Additionally, and more importantly, nothing in the facts alleged in Plaintiff's complaint supports the conclusion that "A Chat With Glendora" has been taken off the air by virtue of TCI's action.

47 U.S.C. § 531(e) provides:

Subject to section 544(d) of this title[, which Plaintiff acknowledges is not relevant to this case], a cable operator shall not exercise any editorial control over any public, educational or governmental use of channel capacity provided pursuant to this section.

Plaintiff's complaint does not identify the "editorial control" that TCI has allegedly exercised. She does not allege and has not offered to demonstrate how the new burdens she must assume in distributing her program to local municipalities affect the content or substance of her program.

Significantly, she has not cited any portion of the federal statute (Cable Communications Policy Act of 1984, as amended and supplemented by the Cable Television Consumer Protection and Competition Act of 1992) which requires TCI to provide public, education or governmental use of channel capacity over one of its system wide channels. The language of § 531(e) specifically refers to "public, educational or governmental use of channel capacity provided pursuant to this section." "[T]his section" refers to § 531(a), which provides, "A franchising authority may establish requirements in a franchise with respect to the designation or use of channel capacity for public, educational, or governmental use only to the extent provided in this section." Subsection (b) of § 531 delimits the franchisor's power to require channel capacity for public, educational or governmental use, subsection (c) provides authority for the franchisor to enforce its requirements and subsection (d) grants rulemaking authority concerning the use of channel capacity to the franchisor. Plaintiff has not alleged that any of the events anticipated by § 531(a), (b),

(c) or (d), without which subsection (e) is meaningless, have occurred.

More significantly, Plaintiff offers "we shall see" in response to ¶ 29 of the affidavit John Wicker, TCI's interim general manager:

29. Following the reassignment of the use of channel 8, the plaintiff will still be afforded ampl[e] use of other alternative public access channels on the TCI–Westchester cable television system for the distribution of plaintiff's programs. In those franchise areas where the several available P[ublic] E[ducational] G[overnmental] Access channels are now administered by a designated local access channel administrator, such as in White Plains where plaintiff is a resident and where the access channels are administered by the White Plains Cable TV Access Commission under the formal authority of the city of White Plains, plaintiff and other public access channel users may deliver their recorded access programs directly to the local administrators for display on the White Plains access channels. In other areas, TCI–Westchester likely will be the default temporary public access channel administrator, and plaintiff will be able to deliver her program tapes directly to TCI–Westchester for display on a public access channel for those areas.

In her opposition at 45 Plaintiff has included a letter dated January 18, 1996 from the Town Supervisor of Eastchester in which he states, "Please be advised that under no circumstances will the Town of Eastchester accept programming that is currently being aired on Public Access Channel 8." According to Wicker, however, TCI has anticipated this contingency. Plaintiff's "we shall see" does not controvert Wicker's testimony. If, during the pendency of these motions, Plaintiff has found that the system anticipated by Wicker is not in place, then she should have put her testimony with an appropriate foundation in an affidavit or affirmation and offered it to supplement her opposition papers. She has not done so. As best as can be determined from the instant record, if "A Chat With Glendora" has not been aired in the Westchester communities served by TCI,

the program has not been aired because Glendora has not followed the new regime for distributing the program.

In light of the conclusion that Plaintiff has failed to allege or offer proof of a violation of 47 U.S.C. § 531(e), the issue of whether Congress intended to grant an implied right of action or suit in § 531 need not be addressed. As the Court of Appeals observed in remanding the issue for consideration by Judge Brieant, courts are divided on this issue. *Glendora v. Cablevision Systems Corp.,* 45 F.3d 36, 38 (2d Cir.1995).

Although Plaintiff appears to cite New York statutes and regulations in the complaint for the purpose of establishing that the State of New York has undertaken to provide cable television as a governmental function, in her papers in opposition to the Defendants' motions she refers to these statutes and regulations as if she had alleged that Defendants had violated their provisions. Despite the general reluctance to consider pendent claims where (1) a similar federal claim(s) have been dismissed and/or (2) the issues raised by the pendent claims have not been addressed in the first instance by New York State courts, in recognition of the liberal construction to be given *pro se* submissions, the Court will treat the complaint as if Plaintiff had asserted violations of these statutes and regulations.

Plaintiff repeatedly contends/urges that TCI has violated the six months notice provision of N.Y.Pub.Serv.Law § 226:

> 1. No cable television company, notwithstanding any provision in a franchise, may abandon any service or portion thereof without giving six months' prior written notice to the commission and to the franchisor, if any, and to the municipalities it serves.

Plaintiff has neither alleged nor explained how TCI's proposal constitutes abandonment of any service or portion thereof. A change in the manner in which a service is provided is not an abandonment. *See Kalisch–Jarcho, Inc. v. City of New York,* 58 N.Y.2d 377, 386 n. 8, 461 N.Y.S.2d 746, 751 n. 8, 448 N.E.2d 413, 418 n. 8 (1983) ("Abandonment connotes relinquishment with the intention of never resuming the interest relinquished."); *cf.*

*Life Industries Corp. v. Star Brite Distributing, Inc.,* 832 F.Supp. 54, 55 (E.D.N.Y.1993). More significantly, the statute obliges the cable provider to send the notice to the Public Service Commission, N.Y.Pub.Serv.Law § 226, the franchisor and the municipality served. Plaintiff does not qualify for any of the three. Assuming *arguendo* that an event occurred which triggered the statute's notice provision, Plaintiff was not entitled to receive that notice.

Plaintiff also cites the anticensorship provision set forth in N.Y.Pub.Serv.Law § 229 subd. 3:

> 3. No cable television company may prohibit or limit any program or class or type of program presented over a leased channel or any channel made available for public access or educational purposes.

Similar to her argument with respect to the "editorial control" provision in the federal statute, Plaintiff fails to allege facts which demonstrate how TCI has prohibited or limited her program from a public access channel. The language of this provision cannot be understood as requiring a cable provider to furnish a system wide channel for public access programming.

This same observation applies to the provisions of 9 N.Y.C.R.R. § 595.4, which are discussed in Wicker's Aff. ¶¶ 12–20. In ¶ 12 Wicker reiterates the central theme of the Defendants' position: "These regulations do not mandate that a single channel be used for system-wide simultaneous distribution of public access programs." Plaintiff has not cited any regulatory language or any authority which renders this observation erroneous. In her opposition at 40 Plaintiff responds to Wicker's averment as follows:

> This channel belongs to us by public domain. We have used it for 10 years. You are trying to rob us. Paul Feiner, Greenburgh supervisor, (six franchises) says the franchises will be revoked if defendants rob us of our public access Channel 8. Further, Paul Feiner said: "If we had known TCI was going to take away public access Channel 8, we would not have signed the franchises." Come on in, Liberty Cable. This is your chance.

Plaintiff's seeming allusion to a form of adverse possession over Channel 8 is absurd. Although the difficulty of apprehending the evidentiary basis for Plaintiff's representations is apparent, the situation may well be ripe for competition inasmuch as Wicker avers that TCI's franchises are not exclusive. Plaintiff is obviously not the authorized representative of the municipalities served by TCI, but she may petition the appropriate local officials to revoke those franchises or impose requirements consistent with the statutes and regulations as a condition of renewing the franchises. That right, however, does not translate into access to a system-wide channel for her programming nor to standing to bring a proceeding in a court.

On August 1, 1996, this office received a copy of the summary order of the Court of Appeals which affirmed Judge Conner's decision to deny Plaintiff a preliminary injunction. *Glendora v. Malone,* No. 96–7068, 1996 WL 678982 (2d Cir. July 25, 1996). The order bears the following endorsement above the caption (emphasis added):

> THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, *BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE,* IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

With respect to the issues addressed in the summary order, the Court of Appeals' analysis and conclusions are consistent with the analysis and conclusions reached herein.

Based on the foregoing, I respectfully recommend that your Honor deny Plaintiff's motions/applications and grant Defendants' motions to dismiss.

### NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed.R.Civ.P. the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed.R.Civ.P., or a total of thirteen (13) working days, (*see* Rule 6(a), Fed.R.Civ.P.), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Jed S. Rakoff at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned, at the said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order or judgment that will be entered by Judge Rakoff. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of H.H.S.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *Wesolek v. Canadair, Ltd.,* 838 F.2d 55, 58 (2d Cir.1988). Requests for extensions of time to file objections must be made to Judge Rakoff and should *not* be made to the undersigned.