**GLENDORA, Plaintiff,**

v.

**Amos B. HOSTETTER, Jr., Timothy P. Neher, Michael J. Ritter, Nancy Hawthorne, Jeffrey T. Delorme, William T. Schleter, Continental Cablevision Inc., Gregg Sanders, Douglas Guthrie, Dianne Rainey, Melissa Cooper and American Cablesystems of New York, Inc., Defendants.**

No. 95 CV 6814.

United States District Court, S.D. New York.

March 12, 1996.

---

Glendora, White Plains, NY, Plaintiff–Pro Se.

Thomas E. Walsh, III, Congers, NY, for Defendants.

### MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

This pro se action is before this Court on plaintiff Glendora's motion for a temporary restraining order and preliminary injunction, pursuant to Rule 65 of the Federal Rules of

Civil Procedure. Glendora is a producer of a public access program called "A Chat with Glendora." Defendants Amos B. Hostetter, Jr., Timothy P. Neher, Michael J. Ritter, Nancy Hawthorne, Jeffrey T. DeLorme, William T. Schleter, Continental Cablevision, Inc., Gregg Sanders, Douglas Guthrie, Dianne Rainey, Melissa Cooper and American Cablesystems of New York, Inc. (collectively "Continental Cablevision") operate a cable television system serving portions of Westchester and Rockland Counties. Pursuant to a franchise agreement with the Town of Ossining, Continental Cablevision provides a public access channel serving a portion of Westchester County. From December 1993 until September 1995, "A Chat with Glendora" was cablecast four Saturdays per month on Continental Cablevision's public access channel. Effective September 1, 1995, Glendora's program was rescheduled from four to two cablecast dates per month.

In this action, Glendora alleges that Continental Cablevision's curtailment of her program's cablecast dates to two per month violates her rights under the First and Fourteenth Amendment, 42 U.S.C. §§ 1981 and 1983, federal law, 47 U.S.C. § 531(e), and state law, N.Y.Exec.Law § 829(3).[1] She has moved for an order restraining and enjoining Continental Cablevision during the pendency of this action from prohibiting and limiting the cablecasting of "A Chat with Glendora" to two dates per month, and to make up all dates missed since September 9, 1995 in prime time or week-end afternoons. This Court held hearings on February 27 and March 7, 1996.

■ The standard for issuance of a preliminary injunction is well settled. The party seeking the injunction must demonstrate (1) irreparable harm should the injunction not be granted, and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. See *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir.1991).

Glendora has failed to demonstrate that she is entitled to injunctive relief at this time. First, Glendora has failed to show that she is likely to succeed on the merits of her claims or that the balance of hardships tip decidedly in her favor.

■ This Court is not persuaded at this time that Glendora's constitutional rights are implicated here. To recover under 42 U.S.C. §§ 1983 and 1981, a plaintiff must show the alleged violation occurred "under color of state law." It is at best unclear whether Continental Cablevision acted under state law in reducing the number of monthly cablecast dates to two. Courts have held that public access channels are not First Amendment "public forums." *Alliance for Community Media v. FCC*, 56 F.3d 105, 120–21 (D.C.Cir.1995); *Glendora v. Cablevision Systems Corporation*, 893 F.Supp. 264, 269 (S.D.N.Y.1995).

Glendora has alleged, however, that Continental Cablevision's decision to reduce her program's cablecast dates occurred under color of state law because it was "compelled, or significantly encouraged, by Westchester officials." Because discovery has not yet begun, Glendora could not be expected to offer significant evidence in support of this allegation. Neither can this Court be expected to conclude at this time, however, that Glendora has demonstrated a likelihood of success on the merits or that the balance of hardships tip decidedly in her favor merely on the basis of this conclusory allegation. Furthermore, Continental Cablevision has submitted the affidavit of Dianne Rainey, who avers that as Director of Government and Public Affairs for Continental Cablevision she made the decision to reschedule the public access cablecast dates to two per month. She states that she was under no pressure from any Westchester County, or other public officials, or any other persons or entities outside Continental Cablevision.

■ This Court also cannot conclude that Glendora has demonstrated a likelihood of

---

1. Neither party addressed nor submitted any evidence on the other state law claims set forth in the complaint.

success on the merits of her § 531(e) claim.[2] Section 531(e) prohibits a cable operator from exercising editorial control over public access programs, such as "A Chat with Glendora." The express purpose of the subchapter is to "assure that cable communications provide and are encouraged to provide the widest possible diversity of information sources and services to the public." 47 U.S.C. § 521(4).

Glendora argues that Continental Cablevision exercised editorial control over her program by reducing its monthly cablecasts from four to two dates per month. Continental Cablevision argues that its rescheduling was merely a business decision undertaken to permit more producers access to channel time. It alleges that all producers whose programs were cablecast four times a month were cut back to two times a month effective September 1, 1995.

In support of her claim, Glendora has offered a newspaper article, dated February 6, 1996, from "The Reporter Dispatch" quoting Rainey as saying: "We have enough channel space.... We have four (system-wide) public-access channels plus educational and municipal access—so that's up to six channels, which is a lot of public access.... I don't think they'll ever be able to fill all ... [cut off]."

In support of its position, Continental Cablevision offers a list of thirty-seven other producers whose programs were rescheduled to two cablecast dates per month, as well as three letters, identical to the one sent to Glendora, advising these producers that their programs would be cablecast only twice per month beginning September 1. In her affidavit, Rainey states that these programs were rescheduled to accommodate the great demand for public access channel time, and has resulted in an additional twelve monthly programs and several individual shows.

Continental Cablevision has also submitted a copy of its franchise agreement with the Town of Ossining. In accordance with appli-cable state regulations setting forth minimum standards for public access, see 9 NYCRR § 595.4,[3] the franchise agreement requires Continental Cablevision to provide a public access channel "for use by any member of the public who so elects, on a first come, first serve basis, subject to fair allocation of time periods and the establishment of reasonable rules by Grantee." It has attached a copy of its "Community Access Programming Operating Rules and Procedures," which state that channel time cannot always be guaranteed and requests are processed on a fair and equitable, nondiscriminatory basis, subject to availability, that consistent time slots for program series are allocated at the discretion of Continental Cablevision, provided that ample time is available for other community programming requests, and that series slots are allocated for twelve months after which a producer must re-apply.

In light of Continental Cablevision's rules coupled with Rainey's affidavit and its evidence tending to show that it has reduced all series programs to two cablecasts per month, this Court cannot conclude that Glendora is likely to succeed on her § 531(e) claim that Continental Cablevision has exercised editorial control over her program or discriminated against her in its allocation of channel time. Nor can this Court conclude on the record before it that the balance of hardships tip decidedly in her favor.

■ Glendora has also failed to demonstrate that she is likely to succeed on her state law claim under § 829(3) of the New York Executive Law. Section 829(3) provides that "[n]o cable television company may prohibit or limit any program or class or type of program presented over a leased channel or any channel made available for public access or educational purposes." N.Y.Exec. Law § 829(3). That statute does not expressly grant a private right of action and New York courts have not to our knowledge implied one. One court has held that the

---

**2.** Section 531(e) provides, in pertinent part, "a cable operator shall not exercise any editorial control over any public, educational, or governmental use of channel capacity provided pursuant to this section." 47 U.S.C. § 531(e).

**3.** Section 595.4 defines public access channel as "a channel designated for noncommercial use by the public on a first-come, first-served, nondiscriminatory basis." NYCRR § 595.4(a)(1).

clear legislative intent of New York's comprehensive framework for supervising and regulating the cable television industry in New York State requires at least the pursuit of administrative remedies before judicial relief is sought. See *Morality in Media of Western New York, Inc. v. City of Buffalo Common Council,* 122 Misc.2d 496, 470 N.Y.S.2d 995, 996–997 (Sup.Ct.1984). Glendora has not alleged that she pursued her administrative remedies.

Glendora has also not shown that she will suffer irreparable harm. Although she alleges that the harm she will suffer is "self-evident" due to Continental Cablevision's interference with her right to freedom of speech, for the reasons stated above, this Court is not persuaded that constitutional rights are implicated here.

In conclusion, Glendora's motion for a preliminary injunction is denied without prejudice to renew following substantial discovery. Her motion for a temporary restraining order is rendered moot by this decision.

SO ORDERED.