*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0320p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROSE WILCHER,

　　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

CITY OF AKRON; DONALD PLUSQUELLIC, Mayor;
and TIME WARNER CABLE NORTHEAST,

　　　　　　　　*Defendants-Appellees.*

No. 06-3848

---

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 05-00866—David D. Dowd, Jr., District Judge.

Argued: April 17, 2007

Decided and Filed: August 16, 2007

Before: MERRITT and GRIFFIN, Circuit Judges; LAWSON, District Judge.[*]

---

## COUNSEL

**ARGUED:** Jacquenette S. Corgan, Daniel J. Leffler, c/o LAW OFFICE OF WARNER MENDENHALL, Akron, Ohio, for Appellant. David A. Muntean, CITY OF AKRON DEPARTMENT OF LAW, Akron, Ohio, Jonathan B. Fellows, BOND, SCHOENECK & KING, Syracuse, New York, for Appellees. **ON BRIEF:** Jacquenette S. Corgan, Daniel J. Leffler, Warner D. Mendenhall, c/o LAW OFFICE OF WARNER MENDENHALL, Akron, Ohio, for Appellant. David A. Muntean, Stephen A. Fallis, CITY OF AKRON DEPARTMENT OF LAW, Akron, Ohio, Jonathan B. Fellows, BOND, SCHOENECK & KING, Syracuse, New York, for Appellees.

---

## OPINION

---

MERRITT, Circuit Judge. Rose Wilcher, a producer of public access programming, claims that Time Warner Cable rules for submitting public access programs violate her First Amendment right of free speech. The specific regulations she challenges are a $25 fee for each tape submitted for broadcast on Time Warner's public access channel and a requirement that the person submitting the program live in the geographic area receiving Time Warner's Akron, Ohio-based cable service.

---

[*] The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

Because Wilcher is unable to show that the actions of Time Warner, a private party, constitute state action or that the regulations approved by the City violate her First Amendment rights, we affirm the district court's dismissal of her complaint.

## I.

Pursuant to its franchise agreement with the municipal government of Akron, Ohio, Time Warner Cable Northeast is obligated to provide at least one community service channel, also known as a "public access channel," that is available to broadcast programming submitted by members of the community. In the agreement, Time Warner reserved the right to promulgate rules and regulations for the channel; but before new rules can become effective, they are "subject to approval of the Akron Public Utilities Commissioner, whose approval shall not be unreasonably withheld." J.A. 13.

From the agreement's inception in 1983 until 2004, Time Warner did not charge a fee when members of the public submitted tapes to be broadcast on the public access channel, nor did the cable company pre-screen the tapes before airing them. According to Wilcher's complaint, in 1999, citizens began complaining about sexually explicit material on the public access channel.[1]

In December 2004, Time Warner proposed new regulations for the public access channel. Most notably, an administration fee of $25 per program would apply to each tape submitted for broadcast and only residents of Akron and surrounding communities would be allowed to submit programs. Pursuant to the franchise agreement, Time Warner submitted the rule changes to the city. Since the city did not have an acting Public Utilities Commissioner, Mayor Don Plusquellic approved the new regulations on behalf of the city.

Rose Wilcher is a resident of Akron, who has been producing a substantial amount of programming for Time Warner's public access channel since March 2000. (As of early 2005, Wilcher had reserved approximately 20 hours per week of broadcasting time on the Akron public access channel.) On April 1, 2005, the day the new regulations took effect, Wilcher applied for a Temporary Restraining Order to enjoin Time Warner from enforcing the $25 fee. After a telephone hearing, the district court denied the application, concluding that the fee was neutral on its face. Wilcher then moved for a preliminary injunction, which was the subject of a hearing on April 11, 2005. Following the hearing, the magistrate judge recommended denying the motion because Time Warner was not a state actor. The plaintiff did not object to the recommendation, and the district court adopted it.

In September 2005, Wilcher filed an amended complaint restating her First Amendment challenges to the $25 fee and residency requirement, and naming Time Warner, the city of Akron and Mayor Plusquellic as defendants. In separate rulings, the district court granted the motions of Time Warner and the city (including the mayor) to dismiss Wilcher's claims because the complaint failed to allege facts showing state action. In granting the city's motion, the court acknowledged that the city is a state actor, but held that the mere approval of Time Warner's rule changes was not sufficient state action to trigger First Amendment scrutiny of the cable company's actions.

Wilcher's responses to the defendants' motions to dismiss also asserted that the First Amendment should apply to the public access channel because it is a public forum. The district court did not specifically address this argument in its decisions, and Wilcher raises it again here.

---

[1]Time Warner denies that the regulations were promulgated in response to the complaints about sexually explicit content on the public access channel. Since this court is reviewing the District Court's grant of a motion to dismiss, the plaintiff's allegations are taken as true.

## II.  State Action

It is undisputed that First Amendment protections are triggered only in the presence of state action.  A private party, acting on its own, cannot ordinarily be said to deprive a citizen of her right to Free Speech.  In pressing her claim against Time Warner, Wilcher is unable to cite any cases where a court has held a cable operator to be a state actor under the First Amendment or any other constitutional provision.  Instead, she argues that Time Warner should be considered a state actor under the three-prong state action test employed by this court.

A private entity, such as Time Warner, can be held to constitutional standards "when its actions so approximate state action that they may be fairly attributable to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000).  In order to test whether private action is fairly attributable to the state, our Court, following Supreme Court precedent,  has applied  three tests: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. *Id.*  A plaintiff need only show state action under one of the tests in order to proceed with her claim.

The public function test requires that "the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1991).  This particular test is derived from the Supreme Court's holding in *Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 351 (1974), that the provision of electric utility services is not a power reserved exclusively to the state.  Wilcher argues that control of a public access channel should be considered a public function because in some communities (but not in Akron) a local government official manages the public access outlet.

To support this assertion, she cites a 1992 report showing a government official managing the public access channel in 12 out of 61 communities surveyed.  The fact that a government official managed public access broadcasting in slightly less than 20% of communities surveyed fifteen years ago is not sufficient to meet the relatively stiff test applied by the Supreme Court in *Metropolitan Edison*.  TV service is not a traditional service of local government.  A service provided by a distinct minority of local governments cannot fairly be characterized as a function traditionally reserved to the state.

The state compulsion test requires that the state "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky*, 960 F.2d at 1335.  Although the franchise agreement provides for a public access channel, Wilcher does not allege that city officials coerced or encouraged Time Warner to change the rules for submitting broadcasts to its public access channel.  Instead, she avers that members of the public complained about indecent programming on the channel to both Time Warner and city officials, and that the cable company responded by proposing changes to the channel's regulations.  The allegation that city officials were concerned about sexually explicit programming on the channel is not sufficient to trigger state actor status. Further, Time Warner, as a private party, is free to respond to complaints from members of the public without triggering state actor scrutiny. Wilcher does not even allege that city officials coerced Time Warner into proposing the new regulations; she, therefore, cannot establish state action under the state compulsion test.  We note here that our holding is limited to the facts alleged in this case.  We do not hold that a cable operator could never be held a state actor under the state compulsion test, only that in order to support such a theory, a plaintiff must allege and prove that state officials coerced or participated in the company's decision-making to the extent required to trigger state actor status.

Under the symbiotic relationship test, the action of a private party constitutes state action where "there is a sufficiently close nexus between the state and the challenged action of the

regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky*, 960 F.2d at 1335. The Supreme Court has cautioned that there is no "readily applicable formula" for finding such a close nexus; divining such a close relationship can only be accomplished "in the framework of the peculiar facts or circumstances present." *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 726 (1961). Wilcher argues that the facts alleged here give rise to a symbiotic relationship because Time Warner and city officials worked "hand-in-glove" to enact the new regulations. Appellant's brief at 19.

The case law does not, however, support such a finding where, as here, the mayor simply approved a decision made by a private party per a contractual arrangement between the two. *Metropolitan Edison*, 419 U.S. at 350 ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment."). Like the electric utility in *Metropolitan Edison*, Time Warner was granted the franchise to provide a service to the citizens of the city by using the public right of way. Time Warner accepted certain regulatory constraints, among them, that a city official approve changes to the rules governing the area's cable access channel. A cable franchisee does not automatically become a state actor when its rules are approved by the local government. The case would be different if the mayor forced the company to prefer one cable channel over another or exclude or accept one particular type of program content. That is not alleged here.

While our Court has never considered the question of state actor liability for a cable operator, the Second Circuit has held that a cable operator is not a state actor where it enacted regulations designed to eliminate indecent broadcasting on a leased access channel. *Loce v. Time Warner Entm't-Advance/Newhouse P'ship*, 191 F.3d 256 (2d Cir. 1999).[2] In *Loce*, Time Warner implemented a policy prohibiting indecent programming on leased access stations in its Rochester, New York, affiliate. The plaintiffs claimed that Time Warner had violated their First Amendment rights when the company refused to air several of their broadcasts. The Second Circuit held that the plaintiffs' claims were barred because Time Warner was not a state actor. *Id.* at 267. The court noted that leased access channels were subject to both federal and state regulation, but held that this alone did not convert Time Warner's private action into state action. The court also rejected the plaintiffs' argument that complaints about the allegedly indecent programming from civic leaders to Time Warner were sufficient to render the new regulations state action. On the facts presented here, we agree with the Second Circuit that state actor liability should not attach to Time Warner.

In dismissing Wilcher's complaint against the city, the district court held that the city's approval of Time Warner's regulations did not constitute state action because of the city's limited role in the process. We do not agree with the conclusion that such an explicit exercise of municipal power falls outside the orbit of the Fourteenth Amendment.

The district court's finding that the city's actions did not constitute state action was based on the Supreme Court's holding in *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982). Specifically, the district court quoted language from the case that indicated that in order to maintain a constitutional claim against a government actor, a plaintiff must show more than that the defendant merely approved or acquiesced in the actions of a private party. J.A. 144. That language is as follows:

> [O]ur precedents indicate that a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be

---

[2] Leased access stations allow programmers to purchase air time from the cable operator for commercial broadcasting. Like public access channels, they are open to anyone, and are controlled by the local cable operator.

that of the State...Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the Fourteenth Amendment.

*Id*.

A close analysis of the facts in *Blum* suggests, however, that the holding in that case does not apply here. In *Blum*, a class of nursing home residents whose care was funded by a state-administered Medicaid program sued the state to stop their nursing homes from moving them to a less intensive level of care without the benefit of a hearing. The Supreme Court noted that the decision to move the patients was made exclusively by the doctors at the nursing homes and the state's only role was to reduce the corresponding reimbursements to the nursing homes to reflect the reduced charges of the lowered level of care. The Court specifically noted that the federal regulations governing the Medicare reimbursement program did not afford the state any independent review of the doctors' decisions. If the doctor recommended a patient be transferred, the state's only role was to ensure that the recommendation was carried out. Where the state's discretion is constrained in such a manner, the Supreme Court held that there was no state action.

Here, on the other hand, the city's role in administering the public access channel was carefully spelled out in its contractual agreement with Time Warner. Instead of granting Time Warner the discretion to administer the channel as it saw fit, the city specifically reserved the power to approve any changes Time Warner made to the rules governing the channel's administration. Unlike the state officials in *Blum*, then, city officials reserved express power to review and overrule decisions made by Time Warner governing the public access channel.

It was under this contractual arrangement that the mayor approved the new regulations Time Warner proposed. In administering this oversight, the city is bound by constitutional constraints, just as it is in any exercise of government power. Since the district court's reliance on *Blum* was in error, we proceed to city's second argument, that even if its actions constituted state action, Wilcher's complaint fails to state a claim under the First Amendment.

### III.  Standing

Wilcher claims that the new rules promulgated by Time Warner and approved by the city violate her First Amendment right of free speech. For the reasons that follow, we hold that Wilcher does not have standing to challenge the residency requirement.

In order to have standing to challenge government action, a plaintiff must satisfy three requirements: (1) injury in fact; (2) a causal connection between the injury and the challenged conduct; and (3) the likelihood that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The injury in fact is an "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.*

One of the regulations that Wilcher challenges states that tapes for broadcast on Time Warner's public access channel may only be submitted by residents of Akron, Barberton, Cuyahoga Falls, Modadore, Munroe Falls, and Wadsworth Township. J.A. 75. According to Wilcher's first amended complaint, she resides at 704 Copley Road, Akron, Ohio, a residence that would permit her to submit tapes for the public access channel. Because the regulation does not prohibit Wilcher from submitting tapes for broadcast, she has suffered no injury in fact from this rule and, therefore, cannot establish standing to challenge it.

## IV.  First Amendment Claim Against City

Whether we characterize the public access channel as a "public forum" (those places "which by long tradition or by government fiat have been devoted to assembly and debate," *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)),[3] or simply as an exercise of state action by the City of Akron, the $25 fee imposed by Time Warner and approved by the City is clearly content-neutral in application and represents a reasonable fee for covering the administrative costs of operating the channel.  The fee applies to all tapes submitted for broadcast on the public access channel, regardless of the subject matter of the programming.  Wilcher does not allege that the fee was motivated by an intent to suppress her views.  The fee is not charged only on tapes that are provocative or controversial.  If the fee were used to limit speech the City considers politically or socially incorrect or critical of certain governmental or private institutions or persons, we would have a different case.  The mayor is not using his authority here to help his political friends or harm opponents of his administration.  We see nothing close to the prohibited line in charging a modest fee for processing video tapes.

For the foregoing reasons, we affirm the judgment of the district court.

---

[3]For a comprehensive discussion of the definitional difficulties underlying the "public forum" doctrines, *see* Tribe, *American Constitutional Law* 986-1010 (2nd ed. 1988).