JACOBS, Judge, concurring in part and dissenting in part
I join the opinion of the Court in affirming the dismissal of the claims against the municipal defendants: the complaint fails to allege actions by the city that amount to "municipal policy." Op. at 308; Monell, 436 U.S. at 691-95, 98 S.Ct. 2018. I respectfully dissent because I would also affirm the dismissal of the claims against Manhattan Community Action Corporation, otherwise known as Manhattan Neighborhood Network ("MNN"). The controlling precedent is Loce v. Time Warner Entertainment Advance/Newhouse Partnership, 191 F.3d 256 (2d Cir. 1999) (Kearse, J.), which ruled that a private corporation operating a television station under a city franchise agreement and in accordance with federal statute is not a state actor. The opinion of the Court wholly relies on a distinction between the leased access channel at issue in *310 Loce and the public access channel at issue in this case. That tenuous distinction is unconvincing and in any event unsupported by our First Amendment jurisprudence.
* * *
"[T]he United States Constitution regulates only the Government, not private parties." United States v. Int'l Bhd. Of Teamsters, 941 F.2d 1292, 1295 (2d Cir. 1991). "A plaintiff pressing a claim of violation of his constitutional rights" under 18 U.S.C. § 1983 is therefore "required to show state action." Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003).
MNN is a private corporation. A private entity may become a state actor only under the following limited conditions:
"(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the state,' or the entity's functions are "entwined" with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity "has been delegated a public function by the state," ('the public function test')."
Sybalski v. Independent Group Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (citing Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) ).
* * *
MNN cannot be cast as a state actor by application of the tests for compulsion or joint action.
Compulsion. "Action taken by private entities with the mere approval or acquiescence of the State is not state action." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). MNN's designation in a franchise agreement and regulation by a municipal commission do not in and of themselves demonstrate that MNN is "controlled" or "compelled" by the state. See San Francisco Arts & Athletics, Inc. v. United States Olympic Comm., 483 U.S. 522, 543-44, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (finding that granting of a corporate charter by Congress does not create state action because "[e]ven extensive regulation by the government does not transform the actions of the regulated entity into those of the government."). To allege compulsion, a plaintiff must show that the government compelled the particular activity that allegedly caused the constitutional injury. See Sybalski, 546 F.3d at 257-58. The amended complaint has no allegation of government involvement in the appellants' suspensions from which state action can be inferred.
Joint Action. The "decisive factor" in entwinement analysis is the "amount of control [the municipality] could potentially exercise over the [private corporation's] 'internal management decisions'." Grogan, 768 F.3d at 269 (internal citations omitted). A corporation thus becomes "part of the Government for the purposes of the First Amendment" when the Government retains "permanent authority to appoint a majority of the directors of that corporation." Lebron v. Nat'l R.R. Passenger Corp., 513 U.S. 374, 400, 115 S.Ct. 961, 130 L.Ed.2d 902 (1999). The city's power of appointment is limited to two of MNN's thirteen board members, and is clearly insufficient to support a finding of state action. See Grogan, 768 F.3d at 269. Nor do the statutory guidelines for cable access or the borough's oversight activities establish joint action between the Government and MNN. "[A] regulatory agency's performance of routine oversight functions to ensure that a company's conduct complies with state law does not so entwine the *311 agency in corporate management as to constitute state action." Tancredi, 316 F.3d at 313 ; see also Sybalski, 546 F.3d at 258-59.
* * *
This leaves the "public function" test as the only remaining vehicle by which MNN's activities may be considered state action. Judge Lohier's concurring opinion undertakes to establish state action under the "public function" test.
A private entity performs a "public function" when its specific conduct at issue in the complaint has historically been "an exclusive prerogative of the sovereign." Grogan v. Blooming Grove Volunteer Ambulance Corp., 768 F.3d 259, 265-67 (2d Cir. 2014) (internal quotation marks omitted). It is argued that one such "traditional and exclusive public function" is "the regulation of free speech in a public forum." Halleck, 224 F.Supp.3d at 244 ; cf. Hotel Emps. & Restaurant Emps. Union, Local 100 v. N.Y.C. Dep't of Parks & Recreation, 311 F.3d 534, 544 (2d Cir. 2002). That presents the question whether a public-access channel is a public forum. Contrary to the view expressed in Judge Lohier's opinion, it is not. That is because, as Judge Pauley observed, "[t]he ownership and operation of an entertainment facility are not powers traditionally exclusively reserved to the State, nor are they functions of sovereignty." Id. at 246 ; see also Denver Area Educ. Telecommunications Consortium, Inc. v. F.C.C., 518 U.S. 727, 740, 116 S.Ct. 2374, 135 L.Ed.2d 888 (1996) (declining to "import" public forum doctrine into the analysis of speech on cable access channels). And it is fortunate for our liberty that it is not at all a near-exclusive function of the state to provide the forums for public expression, politics, information, or entertainment.
Consideration of MNN's status as a state actor therefore requires an examination of its function, guided by these principles. Instead, the opinion of the Court proceeds as follows: private property leased by the Government for public expressive activity creates a public forum, Op. at 306-07; a facility deemed to be a public forum is usually operated by Government, id.; action taken at a facility determined to be a public forum usually is state action, id. at 17; the First Amendment applies to a person acting at such a facility if the person has a sufficient connection to Government authority to constitute state action, id.; and here, the Borough President's designation of MNN to administer the public-access station is sufficient. The opinion of the Court thus drops a link: that the private entity (MNN) performs a function that has been the exclusive (or near-exclusive) function of Government.
The appellants contend that MNN is a "state actor" under the public function test because a public access channel is a public forum. This approach is inconsistent with our Loce precedent that administering leased access channels does not constitute state action. The holding in Loce applies with (at least) equal analytical force to the administration of public-access channels:
The fact that federal law requires a cable operator to maintain leased access channels and the fact that the cable franchise is granted by a local government are insufficient, either singly or in combination, to characterize the cable operator's conduct of its business as state action. Nor does it suffice that cable operators, in their management of leased access channels, are subject to statutory and regulatory limitations.
191 F.3d at 267. The salient distinction between leased access and public-access channels is that federal law requires leased-access channels and merely authorizes public-access channels, *312 47 U.S.C. §§ 531(a), 532(b)(1). So, if anything, the Loce analysis applies to public-access channels a fortiori .[1]
The opinion of the Court distinguishes Loce largely on the basis that there is a fee for leased access whereas public-access is free. That seems to be the whole of it: "Leased channels concern economics. Public access channels concern democracy." Op. at 307; see also Concurring Op. at 309. But not every well-turned phrase is good law. The grant of access to facilities at no cost by non-commercial entities does not transform property into a public forum. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 47, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Nor does a free, public television broadcast constitute a public forum, even if it is directed by statute to serve the "public interest." See Arkansas Educ. Television Comm'n v. Forbes, 523 U.S. 666, 673, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998).
We have not expressly applied Loce to the administration of public-access channels; but the Sixth Circuit has. In Wilcher v. City of Akron, 498 F.3d 516, 519-21 (6th Cir. 2007), that court ruled that there was no state action, relying in part on Loce. While Wilcher did not discuss public forum doctrine, as the concurring opinion concedes, Concurring Op. at 308-09, its ruling that the administration of public access channels was not a public function is an implicit rejection of the theory advanced by Halleck and the opinion of the court. 498 F.3d at 519.
As the Sixth Circuit concluded, the logic of Loce applies with equal force to public-access programming. Cable operators are equally obligated to provide both "forums": federal law requires them to set aside a portion of their capacity for leased access, 47 U.S.C. § 532(b)(1), and permits franchising authorities to require (as the relevant one does) a similar set-aside for public access, id. § 531(a). And in both instances the operators are prohibited by law from exercising editorial control, see id. §§ 532(c)(2), 531(e).
The D.C. Circuit reached the same result in Alliance for Community Media v. F.C.C. ("ACM"), 56 F.3d 105 (D.C. Cir. 1995). Sitting in banc, the D.C. Circuit rejected a First Amendment challenge to portions of a federal statute (and its implementing regulations) that permitted cable operators to block certain non-obscene programming on leased-access and public-access channels alike. It reasoned in part that a public-access channel is not a public forum. Id. at 121, 123 (rejecting the label of "public forum" and holding that cable access channels are not "so dedicated to the public that the First Amendment confers a right to the users to be free from any control by the owner of the cable system"); see also Hudgens v. NLRB, 424 U.S. 507, 509, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976) (finding the dedication of private property as a public forum "attenuated," "by no means" constitutionally required, and untenable).
The in banc court also held that there was no state action under a compulsion theory because the government did not coerce cable operators to act; rather, the law authorized but did not require the prohibition of "indecent" programming. Id. at 116 ("Rather than coerce cable operators, section 10 gives them a choice."), 118 (rejecting that mere "encouragement" by *313 the Government could amount to state action).
When that case was reversed in part and affirmed in part, sub nom. Denver Area Educ. Telecommunications Consortium, Inc., 518 U.S. 727, 116 S.Ct. 2374, 135 L.Ed.2d 888, the Supreme Court ruled on the constitutionality of the indecent language statute and its implementing regulations without however deciding the issue presented in our case: whether the administration of leased-access and public-access programming by private entities constitutes state action. The chief concern of the Supreme Court's opinion-the censorship scheme that constituted the Government action at issue, see 518 U.S. at 737, 116 S.Ct. 2374 -is absent here. The D.C. Circuit's in banc holding on the status of public access (set out below) was thus left intact:
Petitioners think that by calling leased access and [public access] channels "public forums" they may avoid the state action problem and invoke the line of First Amendment decisions restricting governmental control of speakers because of the location of their speech. But a "public forum," or even a "nonpublic forum," in First Amendment parlance is government property. It is not, for instance, a bulletin board in a supermarket, devoted to the public's use, or a page in a newspaper reserved for readers to exchange messages, or a privately owned and operated computer network available to all those willing to pay the subscription fee. The Supreme Court uses the "public forum" designation, or lack thereof, to judge "restrictions that the government seeks to place on the use of its property." International Soc'y for Krishna Consciousness v. Lee, 505 U.S. 672, [112 S.Ct. 2701, 120 L.Ed.2d 541] (1992) (italics added). State action is present because the property is the government's and the government is doing the restricting.
ACM, 56 F.3d at 121.
In its discussion of Denver Area, the opinion of the Court parses and weighs the dicta of individual Justices on an issue that the Court did not disturb: the D.C. Circuit's holding that public forum analysis was inapplicable to leased and public cable access channels. On that score, the D.C. Circuit's holding is consonant with the approach to cable access channels in the Second and Sixth Circuits. Moreover, the exchanges among the various Supreme Court opinions adumbrate support for that holding rather than otherwise.
As the opinion of the Court observes, Justice Kennedy, writing for himself and one other Justice, would have held that a public-access channel is a public forum. But three justices would have held that they are not. Four justices in the plurality observed that it was "unnecessary, indeed, unwise" to decide the question; but one reason they adduced for avoiding the question is suggestive: "[I]t is not at all clear that the public forum doctrine should be imported wholesale into the area of common carriage regulation." 518 U.S. at 749, 116 S.Ct. 2374. If I made my living construing tea-leaves, I would say that a majority of Justices teetered in favor of the D.C. Circuit's holding. But the insights gleaned from the dicta of the various Justices are tentative and indirect, take no account of intervening changes in the Court's composition, and are wholly unreliable as support for any analysis that should decide this appeal.
At least four district judges in this circuit have taken up this issue, three of them in unrelated cases brought by a single busy pro se litigant. In Glendora v. Cablevision Systems Corp., 893 F.Supp. 264 (S.D.N.Y. 1995), Judge Brieant agreed with the ACM opinion of the District of *314 Columbia Circuit, id. at 270 ; described the "two general approaches ... to determine whether seemingly private action is in fact state action," id. at 269 (quoting Jensen v. Farrell Lines, Inc., 625 F.2d 379, 384 (2d Cir. 1980) ); and ruled that neither the "state-function approach" nor the "symbiotic relationship" approach supported state action in the administration of public-access programming. Id. at 269-70. In Glendora v. Hostetter, 916 F.Supp. 1339 (S.D.N.Y. 1996), then-District Judge Parker denied a preliminary injunction in part because he was "not persuaded at this time that Glendora's constitutional rights are implicated," citing ACM and Judge Brieant's opinion on state action, id. at 1341. In Glendora v. Tele-Communications, Inc., 1996 WL 721077 (S.D.N.Y. 1996), Judge Jones cited and (in substance) replicated the analysis in Judge Brieant's opinion, and dismissed the complaint. In Morrone v. CSC Holdings Corp., 363 F.Supp.2d 552 (E.D.N.Y. 2005), Judge Spatt denied a motion for a preliminary injunction in part because "it is clear that" the cable provider "is not a state actor" and "courts have routinely held that public access channels are not First Amendment 'public forums' for the purposes of state action ," citing ACM, Judge Brieant's opinion, and Judge Parker's opinion. Id. at 558 (emphasis added).
Loce, which in my view controls, was issued after ACM and Denver Area, and after the cases of Glendora, Glendora and Glendora.
* * *
A ruling in favor of MNN will be consistent with our precedent in Loce. The majority conclusion that MNN is a state actor opens a split with the Sixth Circuit; considerably worse, it opens a split with the Second Circuit.

Judge Lohier's observation that public speech blends into entertainment is valid, and increasingly so. I do not suggest otherwise. Our point of respectful disagreement is whether, under the public function test, the administration of a cable access channel (whatever its offerings) is a traditional prerogative of sovereignty. The balance of courts hold that it is not; and the Second Circuit in Loce is one of them.